**UNITED STATES DISTRICT COURT**                    Revised 07/07 WDNY
**WESTERN DISTRICT OF NEW YORK**

Vicky L Snyder
_____
                                          **Jury Trial Demanded: Yes  X  No____**

_____
Name(s) of Plaintiff or Plaintiffs

                    -vs-                   **DISCRIMINATION COMPLAINT**

NYS OFFICE OF MENTAL HEALTH,       14 -CV- 6525 T
ROCHESTER PSYCHIATRIC CENTER,
RONALD MORROW
Name of Defendant or Defendants

You should attach a copy of your **original  Equal Employment Opportunity Commission
(EEOC) complaint**, a copy of the Equal Employment Opportunity Commission **decision, AND**
a copy of the **"Right to Sue"** letter you received from the EEOC to this complaint.  Failure to do
so may delay your case.
**Note:**  *Only those grounds raised in the charge filed with the Equal Employment Opportunity
Commission can be considered by the federal district court under the federal
employment discrimination statutes.*

This action is brought for discrimination in employment pursuant to *(check only those that
apply)*:

**  X  ** Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17
(amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.L.No. 102-166) (race,
color, gender, religion, national origin).
   **NOTE:**  In order to bring suit in federal district court under Title
   VII, you **must first obtain a right to sue letter** from the Equal
   Employment Opportunity Commission.

**  X  ** Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634
(amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of
1986, Pub.L.No. 99-592, the Civil Rights Act of 1991, Pub.L.No. 102-166).
   **NOTE:**  In order to bring suit in federal district court under the Age
   Discrimination in Employment Act, you **must first file charges** with the
   Equal Employment Opportunity Commission.

**  X  ** Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117
(amended by the Civil Rights Act of 1991, Pub.L.No. 102-166).
   **NOTE:**  In order to bring suit in federal district court under the Americans
   with Disabilities Act, you **must first obtain a right to sue letter** from the
   Equal Employment Opportunity Commission.

**JURISDICTION** is specifically conferred upon this United States District Court by the
aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343.  Jurisdiction may also be
appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of
1991, Pub.L.No. 102-166, and any related claims under New York law.

**In addition to the federal claims indicated above**, you may wish to include New York State claims, pursuant to 28 U.S.C. § 1367(a).

_____     New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status).

## PARTIES

1.    My address is: Vicky L. Snyder
      320 Audino Lane Apt. D.
      Rochester, NY 14624

      My telephone number is: 585-794-1763

2.    The name of the employer(s), labor organization, employment agency, apprenticeship committee, state or local government agency who I believe discriminated against me is/are as follows:

      Name: Rochester Psychiatric Center

      Number of employees: ≈ 400-500

      Address: 1111 Elmwood Ave
      Roch, NY 14620

3.    (If different than the above), the name and/or the address of the defendant with whom I sought employment, was employed by, received my paycheck from or whom I believed also controlled the terms and conditions under which I were paid or worked. (For example, you worked for a subsidiary of a larger company and that larger company set personnel policies and issued you your paycheck).

      Name: NYS Office of Mental Health

      Address: 44 Holland Ave
      Albany, NY 12229

## CLAIMS

4.    I was first employed by the defendant on (date): August 2004

2

5.  As nearly as possible, the date when the first alleged discriminatory act occurred is: _____
    _February   2013_

6.  As nearly as possible, the date(s) when subsequent acts of discrimination occurred (if any
    did): _Several dates following initial act of Sexual harassment._
    _including email dated 3/5/13 regarding both email._
    _lude and crude comments ongoing of sexual nature_

7.  I believe that the defendant(s)

    a. _X_      Are still committing these acts against me.
    b. _____    Are not still committing these acts against me.
    (Complete this next item **only** if you checked "b" above)  The last discriminatory act
    against me occurred on (date) _____

8.  (Complete this section **only** if you filed a complaint with the New York State Division of
    Human Rights)

    The date when I filed a complaint with the New York State Division of Human Rights is
    _July 2013 (1st complaint)_          _2013 (2nd Complaint)_
    _ (estimate the date, if necessary)

    I filed that complaint in (identify the city and state): _Rochester, NY._

    The Complaint Number was: _1st complaint (10163590) 2nd complant (10165775)_

9.  The New York State Human Rights Commission (did)  _X_  /did not _____
    issue a decision. (**NOTE:** If it **did** issue a decision, you **must** attach one copy of the
    decision to **each** copy of the complaint; failure to do so will delay the initiation of your
    case.)

10. The date (if necessary, estimate the date as accurately as possible) I filed charges with the
    Equal Employment Opportunity Commission (EEOC) regarding defendant's alleged
    discriminatory conduct is: _Dual Filed Both Complaints Due + EEOC At_
    _Same Time 1st complaint July 2013, 2nd Compl. 11/2013_

11. The Equal Employment Opportunity Commission did _____ /did not
    _____ issue a decision. (**NOTE:** If it **did** issue a decision, you **must** attach one
    copy of the decision to **each** copy of the complaint; failure to do so will delay the
    initiation of your case.)

12. The Equal Employment Opportunity Commission issued the attached Notice of Right to
    Sue letter which I received on: _____ _June 23, 2014_ _____. (**NOTE:** If it

**did** issue a Right to Sue letter, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

13.   I am complaining in this action of the following types of actions by the defendants:

a. ___✗___ Failure to provide me with reasonable accommodations to the application process

b. _____ Failure to employ me

c. _____ Termination of my employment

d. _____ Failure to promote me

e. ___✗___ Failure to provide me with reasonable accommodations so I can perform the essential functions of my job

f. _____ Harassment on the basis of my sex

g. _____ Harassment on the basis of unequal terms and conditions of my employment

h. ___✗___ Retaliation because I complained about discrimination or harassment directed toward me

i. ___✗___ Retaliation because I complained about discrimination or harassment directed toward others

j. ___✗___ Other actions (please describe) _Sexual Harassment - Hostile_ _Work Environment_

14.   Defendant's conduct is discriminatory with respect to which of the following *(check all that apply)*:

a. _____ Race

b. _____ Color

c. _____ Sex

d. _____ Religion

e. _____ National Origin

f. ___✗___ Sexual Harassment

g. ___✗___ Age
_____5/21/62_____ Date of birth

h. ___✗___ Disability
Are you incorrectly perceived as being disabled by your employer?
_____ yes __✗__ no

15.   I believe that I was _✗__ /was not _____ **intentionally** discriminated against by the defendant(s).

4

16. I believe that the defendant(s) is/are ✕ is not/are not _____ still committing these acts against me. (If you answer is that the acts are not still being committed, state when: _____ and why the defendant(s) stopped committing these acts against you: _____

17. **A copy of the charge to the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of my claim.** (**NOTE**: You **must** attach a copy of the **original complaint** you filed with the Equal Employment Opportunity Commission and a copy of the **Equal Employment Opportunity Commission affidavit** to this complaint; failure to do so will delay initiation of your case.)

18. The Equal Employment Opportunity Commission *(check one)*:
   _____ **has not** issued a Right to sue letter
   ✕ **has** issued a Right to sue letter, which I received on _____June 23, 2013_____

19. State here as briefly as possible the *facts* of your case. Describe how each defendant is involved, including *dates* and *places*. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. *(Use as much space as you need. Attach extra sheets if necessary.)*

Plaintiff, View L Snyder complained of Sexual Harassment which occurred at the Rochester Psychiatric Center. Nature of complaint details Sexual touching of my breast, numerous comments regarding sexual comments, other inappropriate touching, inappropriate emails of a sexual nature. After Plaintiff reported sexual harassment Plaintiff immediately suffered a hostile work environment by other officers and even by Supervisor. Affirmative Action did not immediately take action. (Please see Plaintiffs complaint attached detailing specifics)

## FOR LITIGANTS ALLEGING AGE DISCRIMINATION

20. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct
   ✕ 60 days or more have elapsed _____ less than 60 days have elapsed

## FOR LITIGANTS ALLEGING AN AMERICANS WITH DISABILITIES ACT CLAIM

21. I first disclosed my disability to my employer (or my employer first became aware of my disability on 1st time ≈ 2006 or 2007; For purposes of this complaint, immediately in March of 2013. After Sexually Assaulted (breast grabbed)

5

22.  The date on which I first asked my employer for reasonable accommodation of my disability is _Various dates from April 2013 to most recent denial of an Adjusted Work Schedule on 7/2014._

23.  The reasonable accommodations for my disability (if any) that my employer provided to me are: _None- was not accepted at any time_

____

24.  The reasonable accommodation provided to me by my employer were _____ (were not) __✓__ effective.

**WHEREFORE**, I respectfully request this Court to grant me such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

Dated: _9/9/14_                         _Cindy K. Snyder_

Plaintiff's Signature

UNTIED STATES DISTRICT COUT
WESTERN DISTRICT OF THE STATE OF NEW YORK

---

VICKY L. SNYDER,

Plaintiff.

Vs.

DISCRIMINATION COMPLAINT

NYS OFFICE OF MENTAL HEALTH;
ROCHESTER PSYCHIATRIC CENTER,
RONALD MORROW.

Defendant.

---

## JURISDICTION

Plaintiff, Vicky L. Snyder brings this discrimination complaint before the Western District of New York claiming several acts of discrimination against employer NYS Office of Mental Health, Rochester Psychiatric Center, and Ronald Morrow. This is a Sexual Harassment Case under Title VII as based on a Federal question, as well as numerous discriminatory acts based on Reasonable Accommodation requests, and age discrimination, playing a part in decisions; and therefore, this court has Jurisdiction to hear such this case in its entirety. Please note Plaintiff has received Right to Sue letter from EEOC.

## PARTIES

1. Plaintiff, Vicky L. Snyder resides in Monroe County, State of New York, and at time of said acts of discrimination, employer 's address is also within the County of Monroe State of New York.
2. Defendant, New York State Office of Mental Health is located at 44 Holland Ave, Albany NY, and has also engaged in several acts of discrimination.
3. Rochester Psychiatric Center is located at 1111 Elmwood Ave, Rochester NY 14620, and is the employer who allowed each and every act of discrimination to take place.

## CLAIMS

4. For purposes of this complaint, plaintiff, Vicky L. Snyder, is claiming sexual harassment which took place from first act of inappropriate touching of a sexual nature on or around the date of 2/13/13, while at work, performing daily duties as specified; an Officer grabbed my breast while in pre-shift room, and plaintiff was totally astonished as to this outrageous act.

5. After this incident, plaintiff incurred several more acts of a sexual nature by Officer Ronald Morrow, all of which were not provoked, nor any engagement at all by plaintiff.  These acts included leers, gestures of a sexual nature, inappropriate touching, all of which occurred in or around March of 2013.

6. Plaintiff feared confronting Officer, therefore, plaintiff did not confront Officer until he commented about a hotel in an email.  Officer Morrow commented that this was a joke.  Plaintiff did not take this joke at any time, and told Officer this was inappropriate.

7. Officer Morrow knew immediately his actions were not condoned or warranted, as plaintiff will show evidence that he knew full well what he did was wrong and I was upset.

8. Plaintiff reported incidents to her supervisor, Chief Hanley about 3/5/13 after the email regarding hotel.

9. Upon reporting to my immediate supervisor, Chief Hanley, the whole thing thereafter, was handled inappropriately by management and Affirmative Action.

10. Plaintiff will produce evidence of numerous medical documentation regarding impact of this particular situation had on my mental and physical health.

11. Since the reporting of this sexual harassment, plaintiff has suffered emotional distress, embarrassment, humiliation, degradation, discriminatory remarks by co-workers, defamatory remarks, retaliation, threats, the  brunt of sexual jokes, behavior by fellow officers which rose to gross misconduct on their part, occurring at the Rochester Psychiatric Center, while employed in their Safety and Security Department.  This clearly and concisely was a hostile environment.

12. Plaintiff will show numerous attempts made to Affirmative Action to detail such hostile environment, all of which went unanswered.

13. Supervisors were aware and did know of this conduct, and did nothing to stop the egregious acts of some of the officers.  Later it will be evident why they did nothing to stop these acts, as they, meaning Supervisors, etc. were part of the problem engaging in these acts.  A Sgt, who acted as my supervisor many times in Chief's absence, made comments, how some of officers' behaviors had to stop because he did not want to end up in personnel.  Please keep in mind, this Sgt. Was once the trainer of the Sexual harassment class.  He did nothing to compel officer to cease any of the rude and ludicrous comments, as well as their conduct.

14. Evidence will further show that while Officer Morrow blatantly lied in 1st DHR hearing, stating that he knew of no reason why he was being taken out of work, plaintiff can produce witness to the contrary. He knew same day or shortly thereafter.

15. Also, please take notice during hearing when Ms., Kaplan, investigator, DHR asked Mr. Morrow why he was taken out of work, he stated he had no idea. Plaintiff intends to show that he did know immediately, and also, during such hearing when plaintiff was asked about other officers, Mr. Morrow immediately went back and made them aware, creating a further environment where plaintiff actually feared going to work.

16. Because of this gross misconduct, Plaintiff further suffered rude comments, leers, defamation, etc. to point it became impossible to perform daily functions of her job.

17. Evidence will further show that after reporting such incidents to her supervisor, Plaintiff suffered severe emotional distress as a result of hostile work environment which she endured on an almost daily basis in the Safety Department, which I went home crying, not being able to sleep or eat.  This caused two emergency room visits as well as one inpatient visit.

18. Evidence will clearly show that after reporting such incident, it altered the terms of her employment so severely, so that a reasonable person would not be able to function and perform the normal duties of the job.

19. Evidence will further show, that swift and appropriate action was not taken by supervisors, and Affirmative Action not only failed to take immediate action, never kept plaintiff apprised of situation.

20. Evidence will show how a Sgt. in the Safety Department interfered with the criminal investigation of this matter which took place around May of 2013.

21. Evidence will show how the supervisor, Chief Hanley treated plaintiff a few months after this complaint was reported created the hostile environment and depraved indifference in behavior in the department, which made plaintiff fear for her wellbeing more than ever and thus reported to personnel.

22. In fact, plaintiff is able to prove that the investigation into my allegations were to cease and now Albany, Marisol Nunez, and Goers Office, Carol Bradwell and Alan Sanjukian, Counsel,  were all planning their attack to turn around and interrogate me.

23. Plaintiff will show evidence of how they did in fact interrogate me on 10/4/13, in which plaintiff feels this is a total act of retaliation. Retaliation and any adverse action taken against someone for making a complaint,  and therefore, interrogating me like I am a sexual deviant, never closing or disposing of case in any fashion, further implies, retaliation and something the agency would like to keep out there hanging over my head. Listen to DVD of said interrogation. Please keep in mind, after listening to this, there were no complaints made by anyone, but merely statements made by other officers saying I was flirtatious and I basically deserved this. And Carol Bradwell, from the GOERS office, who headed up my interrogation, said they had to look into anything that may be sexual harassment. I tried numerous times to try to figure out who was handling interrogation, all without success. Carol Bradwell, I was told was retired, Marison Nunez-Rodrigues said she was not handling it, Personnel did not know, etc. Go and ask Albany, any of them, ask my personnel department, and everyone defers it to someone else. But yet, it was so important to cease my complaint and interrogate me, and keep it open, and nobody can tell you who is handling it. Now if this isn't the state at its finest hour.

24. To date, September 8, 2014, there has been no resolution or determination on this interrogation, so it is open.  It follows me wherever I go.  Now, if one is to believe any of this, then I should have been placed on Administrative Leave. Now, if one believes that this is a tactic, last ditch used by MH and RPC, then why, almost a year, has it not been dealt with.

25. As a result of this interrogation, plaintiff further suffered severe emotional distress, insomnia, depression, anxiety, severe panic disorder, and fear, PTSD, and almost loss of life.

26. In December of 2013, plaintiff will further show proof of Vice President of my Union, CSEA, Charles Session, engaging in an "off the record: conversation with Sgt. Reed.  Sum and substance of this conversation was that Sgt. Reed said whatever happened to me I deserved it.  Plaintiff further will show evidence of this, all to which nothing has been done.

27. Plaintiff was forced to move to several different departments within RPC after reporting such acts. Plaintiff was continually chastised in different departments, especially when it came to asking for AWS or Reasonable Accommodations.

28. Evidence will show that Plaintiff was denied requests for alternate work schedules and reasonable accommodations, and how such accommodations were allowed for other workers.

29. Evidence will also show years prior to this complaint, plaintiff was granted AWS. Plaintiff was granted Reasonable Accommodation. Plaintiff intends to further show how doctor at RPC had to save her life one day.

30. Evidence will show that plaintiff brought her first complaint to attention of NYS Division of Human rights, wherein DHR found probable cause in initial complaint. Hearing to be held September 17 and September 18;   Please note at this time Plaintiff is trying to request an adjournment, which has been denied so far.   On 9/10/13, Plaintiff was granted an adjournment.

31. Evidence  will further who that after reporting such complaint, The Rochester Psychiatric Center was told to cease all further investigations into my complaint, and then was told to interrogate me. And...they did.

32. Evidence will prevail, truth will be heard, and I am prepared to show that I was hired in the state in October of 1999. Never, will you find a counseling about anything, inappropriate behavior, misconduct, inappropriate dress, Bullying, Disrespect, Rules of Conduct, Workplace Violence, etc.

## RELIEF SOUGHT

33. As a result of these numerous acts of discrimination, plaintiff has loss enjoyment of life, was hospitalized as plaintiff just did not want to live; had two emergency room visits due to this incident. Suffered severe financial loss, loss of a fiancé, numerous medical bills, faced eviction, etc Plaintiff fully intends to prove that these acts did and are still occurring at this time.   Loss of relationship with brother and sister.  Loss of time spent with elderly and infirm father. Severe weight gain.  Son and daughter witnessing their mother trying to end her life, and making them think they would be better without her. The constant fear that because interrogation was not resolved that plaintiff would be fired at any time.

Please these are only estimates at this time. In the amount of loss wages, plaintiff is seeking 22,774 in 2013, the reimbursement to WCB of 17500, $6000 in 2014, loss of retirement, loss of deferred comp. during that time, plus had to pay $1645 for actual blue choice because of being on Leave without Pay Status. Further co-pays which can be estimated at this time approximately $3000. Since September 4th, plaintiff has been able to obtain employment at the NYS Worker's Compensation Board.

Copays: Medications: 400
Ambulance: 200
Therapy 160
Compensatory
nonpecuniary

WHEREFORE, plaintiff seeks remedy for the financial loss as well as seeking damages
for Punitive and Compensatory Damages in the amount of $300,000.00.

DATED: September 11, 2014

Vicky L. Snyder
320 Audino Lane Apt. D
Rochester, NY 14624
Phone: 585-794-1763

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Vicky L. Snyder<br>320 Audino Lane, Apt. D<br>Rochester, NY 14624 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2014-00769 | Holly M. Woodyard,<br>State & Local Coordinator | (212) 336-3643 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

Kevin J. Berry,
District Director

June 19, 2014
(Date Mailed)

Enclosures(s)

cc:

NEW YORK STATE, OFFICE OF MENTAL HEALTH
ROCHESTER PSYCHIATRIC CENTER
Attn: Marisol Nunez-Rodriguez, MPA, Acting Chief
Diversity Officer
44 Holland Avenue
Albany, NY 12229

NEW YORK STATE, OFFICE OF MENTAL HEALTH
ROCHESTER PSYCHIATRIC CENTER
Attn: Alan H. Zunukjian, Esq., Asst. Counsel
Office of Counsel
44 Holland Avenue
Albany, NY 12229

VICKY L. SNYDER,

Complainant

REVIEW OF DIV. OF
HUMAN RIGHTS ORDER
AFTER INVESTIGATION
Case No. 10165775

v.

NEW YORK STATE, OFFICE OF MENTAL
HEALTH, ROCHESTER PSYCHIATRIC CENTER,
_____ Respondent.

Federal Charge No. 16GB400769

Complainant, Vicky L. Snyder, filed a second discrimination case with Division of
Human Rights on 11/26/13, Case No. 10165775. The result of DHR's investigation was
that they found no probable cause.

I am requesting EEOC to review this second complaint in its entirety. This complaint
was filed after reporting a sexual harassment discrimination case with Division of
Human Rights back in June of 2013, which also was dual filed with the EEOC.
Please note that in this initial complaint with DHR, they did find probable cause. Please
see DHR complaint Case #10163590 and EEOC #16 GB304431.

Complainant has suffered further retaliation, hostile work environment, discrimination
regarding disability and request for reasonable accommodation, as well as adverse
employment action. Employee has suffered severe financial loss and emotional distress.

Personnel and supervisors have continually messed up timesheets resulting in paycheck
erros as a result of being taken out of work due to emotional stress. I am supposedly at
an overage of approximately $2,800, which I have requested an audit and a thorough
explanation regarding this. My records do not coincide with theirs. Also, Complainant
was due personal leave in the amount of five days, which should have been given to me
upon my return to work in November 2013. This was not given to me until February of
2014.

RETALIATIOM: Please see emails wherein Complainant was interrogated on Oct. 4th,
as a result of my reporting Sexual Harassment with my employer on March 5, 2013. This
is a pure act of retaliation which has not been resolved by Affirmative Action to date. I
believe that there is enough to substantiate a prima facie case. Though DHR found no
probable cause as a result of their investigation, they did mention temporal proximity.
Complaint preys that EEOC will find probable cause.

FIRST: On October 4, 2013, Complainant was interrogated by Carol Bradwell, who is
employed by the GOER's Office. Complainant later found out that she has since retired,
or was even semi-retired at the time, and now it is handled by WDU. Then I was told it

was being handled by Alan Sunukjisn, of Counsel's office. (Please see several emails where I am being caught up in a shuffle on who is handling this, as well as numerous attempts to find out the resolution with regard to this matter. Complainant feels that this interrogation was done to try to mitigate RPC's involvement in the Sexual Harassment case. First and foremost how can Mr. Sunjukjisn handle this interrogation, as I believe this would be a conflict of interest. He is the attorney for Rochester Psychiatric Center. This is totally incomprehensible to me.

SECOND: When Complainant returned to work after the 100% disability on 9.23.13, I was placed on 3rd, floor, Administration Offices. After interrogation on Oct. 4th, I again was unable to perform job duties due to a hostile work environment and was again taken out of work. Complainant stated to Personnel that Mr. Joe Coffey made a comment regarding (there she is, handcuff her). DHR found that this did not rise to level of hostile work environment. Complainant feels this is totally an act that created a hostile work environment for me, as I was facing an interrogation of which I did not know the sum and substance of at that time. Mind you, this was stated while he was with a Rochester Police Dept. Officer, as well as my ex supervisor, Richard Hanley. I believe that if one were to look at the totality of the circumstances and place themselves in my shoes, that this was a total disregard for professionalism, and thus a hostile work environment. Again I was out of work due to increase in panic attacks, sick to stomach, and unable to sleep. Complainant returned to work once again in December, but Complainant was told she had to move again, at which time I moved to the Business Office. I have suffered adverse employment action as I was continually moved from one place to the other in RPC. RPC continually moved me rather than discipline employees who were out of line and created a hostile environment. To date, employee has had to move from Safety, HIMS, Administration, and currently in Business Office.

THIRD: By Respondent not handling this situation with due diligence and in a swift and appropriate manner, this has caused plaintiff to suffer further acts of hostile work environment. Please note in second complaint wherein RPC employee, Charles Session, who is also CSEA Vice President, reported to Complainant a conversation which took place between himself and a SGT. Reed. Please note that Sgt. Reed was named in my initial complaint in how he mishandled the criminal aspect of this. The conversation basically entailed the Sgt. telling Charles that I deserved this (being touched on breast) as I wore my clothes too tight and I was flirtatious. When I asked Charles to report this to personnel, I was told that if I reported this he would deny it. (Please see letter also from Glenn Litzenberger). As a result, both parties were interrogated, and this was also reported to the Union. Complainant has no idea of the outcome.

FOURTH: Please see Title VII of the Civil Rights Act of 1964. The mere fact that DHR stated, "While there is temporal proximity between Complainant's discrimination complaints and Respondent's interrogation, there was insufficient evidence to show that the interrogation was retaliation for her discrimination complaints". This shows that temporal proximity is crucial for retaliation, and most of these cases are just

circumstantial evidence. Also, Complainant has suffered adversely for this retaliatory action.

The temporal proximity of this retaliatory act is abundant.

**#1**. In initial DHR hearing held on November 7th, 2013, AAA, Cynthia Crowell stated that while in course of her investigation, *statements* by co-workers brought forth the interrogation on me. The temporal proximity to me making the formal SH complaint on 3/5/13 and the ball rolling to interrogate me started almost immediately. Though actual interrogation did not take place until October, this was in the works almost immediately. Ms. Crowell stated in hearing that she was told not to address my complaint further until these statements by coworkers could be looked into further. Mind you, most interrogations of sexual harassment are initiated by a *complaint* not statements during the course of another investigation. Complainant also asked personnel Director, Colomba Misseritti why I was not put on Administrative Leave with Pay as other people while this investigation was going on. I was told that obviously this does not rise to that. (Please see Ms. Miserritti's email to me with regard to that question.

**#2**. Complainant has never been counseled, verbally or written within the 14 years of state service, let alone being the subject of an interrogation which basically implies I am a sexual deviant. Also, by mere virtue that this interrogation took place at all, and is still ongoing without resolution shows retaliation and an environment which is not free from hostility, (hostile work environment). Please see numerous emails sent to Marisol Nunez-Rodrigues trying to find out the outcome of this interrogation all to no avail. I have also requested through counsel's office a FOIL request to obtain information regarding this interrogation on October 4th, with no response at all. A call was placed on Thursday May 8[th, 2014] to Counsel's Office. Complainant further followed up by email yesterday. Again, all without any resolution to my interrogation. What I find astounding is that DHR found no probable cause and stated I did not suffer any adverse employment action, however this is ongoing. So, if we close this case out, OMH could do something else to me which is worse than being shuffled from department to department. That is why Complainant is vehemently opposed to having this case closed. I believe that there is enough to substantiate my prima facie case.

**#3** Please see Rochester Psychiatric Center's Affirmative Action Plan which was in effect December of 2009. Please see the" *Implementation Responsibilities*" which starts on Page 4. RPC has dropped the ball in each of these areas. Also, please take heed to Part VI, page 10, *Discrimination Complaint Procedure*. RPC's Personnel office also sent a Workplace Violence Form to my home which I completed and returned. To date there has been no response regarding this. Affirmative Action Office is also supposed to inform the complainant within 60 days of the occurrence of the event which gave rise the complaint. Oh that's right. There was no complaint, just statements of employees who worked in the Safety Dept. and are friends with the Respondent, Ronal Morrow, whom I made the sexual harassment complaint against. Please note again, my interrogation took place on the 4th of October, 2013, and I still have no resolution in that manner. Also,

EEOC
May 12, 2014
Page 4

when questioned who is actually handling that complaint, I am shuffled from one person to another. My name is being thrown around like a pinball. Also requests under the FOIL Act have not been answered to date, so therefore I am unable to respond to specifics and give dates, only approximations.

Also, please note regarding the disability complaint, Vickie Eudell was in charge of the Reasonable Accommodation. She informed me that my request could not be accommodated. Though this was stated verbally and at same time I was taken out of work (100%), how can this be not construed as denying a reasonable accommodation? Medicals from Unity were in July asking for a six hour work day. I am at a lost to this finding. Also, how do you ignore the fact when I returned to work on Sept. 23rd, Joanne Smith's comments regarding them keeping a pregnant African American woman, who could not perform some key elements of the job not be construed as discrimination with regard to what I was asking.

Though DHR was not privy to all the information at time of investigation, I was most recently hospitalized from April 16th through the 22nd for emotional distress.

I prey herein, that EEOC makes a determination of probable cause for the above-mentioned acts of discrimination. If EEOC cannot make this determination, I request swift and appropriate action to receive my right to sue letter.

Sincerely,

*Vicky L. Snyder*   5/13/14

Vicky L. Snyder

ATTACHMENTS:

TEMPORAL PROXIMITY CONTENT
OVERPAYMENT NOTICE FROM MARY KELLIT
AFFIRMATIVE ACTION PLAN
FEB. 14th LETTER - VICKIE EUDELL RE: C.S. FO.R.



**ANDREW M. CUOMO**
GOVERNOR

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>VICKY L. SNYDER,<br><br>　　　　　　　　　　　Complainant,<br><br>　　　　　　v.<br><br>NEW YORK STATE, OFFICE OF MENTAL HEALTH, ROCHESTER PSYCHIATRIC CENTER,<br>　　　　　　　　　　　Respondent. | DETERMINATION AND ORDER AFTER INVESTIGATION<br><br>Case No.<br>10165775 |

Federal Charge No. 16GB400769

On 11/26/2013, Vicky L. Snyder filed a verified complaint with the New York State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to employment because of disability, sex, opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15 (Human Rights Law).

After investigation, and following opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of. This determination is based on the following:

Investigation did not disclose sufficient evidence to support the allegations of unlawful discrimination that are contained in the complaint. Investigation showed that Complainant asserts that the Director of Facility Services made a comment about handcuffing her, which Respondent denies. However, even if true as alleged by Complainant, one comment of this nature does not rise to the level of severe or pervasive and thus does not constitute a hostile work environment under the NYS Human Rights Law. Investigation showed that Complainant filed an internal sexual harassment complaint in March of 2013 and a DHR complaint on July 26, 2013. Investigation showed that on October 4, 2013, Complainant was interrogated by Respondent after it received information supplied by Complainant's coworkers during its investigation of Complainant's internal sexual harassment complaint. Thus, while there is temporal proximity between Complainant's discrimination complaints and Respondent's interrogation, there was insufficient evidence to show that the interrogation was retaliation for her discrimination complaints. Moreover, the evidence shows that no disciplinary action has

been taken against Complainant because of this interrogation. Although Complainant maintains that there has been no decision made regarding her interrogation, the complainant has not suffered an adverse employment action by the respondent. Investigation also did not establish that Complainant was denied a reasonable accommodation. Investigation showed that while Respondent was evaluating Complainant's reasonable accommodation request for shorter work days, she was taken out of work temporarily because she was 100% disabled and Complainant was accommodated with the medical leave that she required. Investigation did not reveal sufficient evidence to support a conclusion that Complainant was denied equal terms, conditions and privileges of employment because of her sex, disability, and/or opposition to discrimination. Therefore, there is no probable cause to support the allegations of the complaint.

The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination. A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under Title VII of the Civil Rights Act of 1964. Your charge was also filed under the Americans with Disabilities Act (ADA). Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity Commission (EEOC). You have the right to request a review by EEOC of this action. To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112. Otherwise, EEOC will generally adopt our action in your case.

Dated:      **MAY 0 8 2014**

Rochester, New York

STATE DIVISION OF HUMAN RIGHTS

By: _Julia B Day_

Julia B. Day

Regional Director

- 2 -

Vicky L. Snyder
320 Audino Lane Apt. D
Rochester, NY 14624
March 3, 2014

Ms. Jamie Kaplan
Human Rights Investigator II
Division of Human Rights
259 Monroe Avenue
One Monroe Square, Suite 308
Rochester, NY 14607

> Re: Vicky L. Snyder v. New York State, Office of Mental Health, Rochester
> Psychiatric Center Case No. 10165775

Dear Ms. Kaplan:

This letter is in response to the Second complaint hearing which was held on February
25, 2014.

In response to **Allegation #1 Retaliation**

First and foremost you have had the opportunity to listen to the DVD of my interrogation
which took place at the Rochester Psychiatric Center on October 4, 2013. I feel that this
was a total retaliatory act due to my making a sexual harassment complaint against
Ronald Morrow, SSO I on 3/5/13 for his actions on 2/13/13. I am further troubled that
there has been no answer, even though I have made numerous requests to an outcome of
this ludicrous interrogation against me. I even had the opportunity to speak with Ms.
Misseritti last Thursday, March 6th, to make her aware that I had still not received a
response. Why was Ms. Bradwell or Marisol Nunez not at this meeting? I think the thing
that DHR should really look into is that:

1. There was never a formal complaint filed by any of these officers. Though Ms.
   Misseritti felt that the words, "statement, interview and/or interrogation could be
   used interchangeably, let me make it clear that this is not the case. An
   interrogation is with many people, usually entails a list of questions, sometimes
   recorded, and the outcomes could vary depending on severity, including loss of
   job. Maybe that's the first misconception that RPC has done with this whole
   mess to begin with, not using the terminology correctly.

2. If in fact I did do any of those horrendous things, then there was a duty and
   obligation for it to be reported. Let me say once again, there was never a formal
   complaint filed, but came out of statements by officers from my complaint against
   Mr. Morrow. I even asked Joe Coffey's secretary, Deb Olmstead if she would
   feel comfortable to write a letter about the "environment" of Room A101. She

Jamie Kaplan
March 3, 2014
Page 2

> was told not to get involved. Wow, wonder who advised her of that...let's ponder that a moment.

3.  They GOERS Office decided several months later to stop progress on my case and prepare for an interrogation on me. Then when Vickie Eudell said that Marisol Nunez would not have allowed that to go through, (meaning my interrogation), but Carol Bradwell who works for the GOERS Office, who has been apparently retired for some time, is called in from outside to interrogate me. Who advised her to interrogate me? Why was she not at this hearing? It obviously is not important enough for anyone to give me closure on this situation. So as they pursued this diligently and wantonly, why has there been no conclusion one way or another. However, please note in states Response to my #2 complaint they stated they found no sexual harassment on my part, however there could have been things construed as inappropriate. This whole thing has been inappropriate on the part of RPC.

4.  Furthermore, to my total dismay, I receive a letter forwarded by you from RPC, Ms. Misseritti, in which she says that she forwarded the concerns of my "restricted phone calls to Mr. Sunukijan, Atty. for RPC, who forward it to Director of Internal Affairs, Bill McDermott. I cannot even fathom his unprofessional and ridiculous response. He states he tried calling me at the two numbers given to him by Diversity Managements; one my cell phone the other my old work number, 241-1633, when I worked in Safety, which I have not been at since June 10th of 2013. Really, I feel we should do a "dump" on his phone to see if he really called me. This is further indicative that my complaints have not been taken seriously from the onset. To make it look like I ignored these "ghost" phone calls from Mr. McDermott insults my intelligence. Why would he contact Chief Hanley? He was named in my initial complaint. Does anyone really know the gravity of this situation at hand? Also, where are the emails that went back and forth between all these individuals stating how Mr. McDermott tried contacting me, and how Mr. McDermott had several discussions with Mr. Sunukjian from their legal department? This is frightening to say the least. How dare they even suggest this with an active investigation going on, and the point is I was informed, knew of said interrogation before hand, said interrogation did take place and was a total act of retaliation.

In response to **Allegation #2 Hostile Work Environment**

This has never stopped since day one and continues even now. Mr. Joe Coffey most certainly did make that comment, "there she is, handcuff her etc". Whether he did it jokingly or was meant for Ms. Carson, secretary who sits behind me, he said it. He knows he said it. Then for Chief Hanley to deny he heard it, as he was laughing, I feel is total disrespectful, let alone produces an environment where I do not, nor can I feel safe anywhere I go. When you asked Ms. Colomba Misseritti if this was followed up on, she could not even recall. How do you not recall this as I reported it to them and further

Jamie Kaplan
March 3, 2014
Page 3

missed work due to this stress. How was that not important enough? I feel Mr. Coffey
should be put under the same scrutiny as any other individual at RPC who acts
inappropriately, and creates a hostile work environment. Why is he held to a different
standard than anyone else would be had they made an outlandish comment. Then, though
not a part of this complaint, Sgt. Reed and my union Vice President, Charles Session,
decide to have an "off the record" discussion about me. Sgt. Reed states that I deserved it
because I am flirtatious and I wear my clothes too tight. The only reason I became privy
to this information is because the Vice President told me himself. When I told him he
had to report it, he said he would lie and deny that he ever had a conversation with me. It
did lead to an interrogation, however I do not know outcome. I have not been back to
work since before hearings.

In Response to **Allegation #3 Disability**

Now mind you, a lot of this is time barred, however Ms. Misseritti wanted to talk about
my absences for past few years. Let's worry about now. In May, Ms. Misseritti and I
started talking about what was going on in Safety. On June 10, Chief and I had our final
discussion then I went to HIMS. My health, mental and physical, still not doing well, so
when I spoke with Colomba regarding the Chief and the need to move immediately, in
June we started discussing the VRWS (Voluntary Reduction in Work Schedule). By July
it started to become a Reasonable Accommodation issue because it was medically driven.
I was told that a VRWS was not going to happen, as HIMS could not accommodate that,
and that now Vickie Eudell would be handling the RA, which was later, as Cynthia
Crowell was no longer Affirmative Action. Might have been nice to know a couple
months earlier when she no longer returned calls, etc. I am unsure what happened in
those few weeks, but by time Vickie Eudelll said she received it, I believe I had gone to
the State doctor and he had said 100% disabled at that time. When I returned on 9/23/13
to the Administration floor, that is when I learned that an African American pregnant
female was able to be reasonably accommodated, and she could not even carry out the
physical aspect of that job. I was told this by Joan Smith, Health Administrator. I believe
the lack of working on my situation was due in a large degree because Cynthia Crowell
was not going to be working in Affirmative Action anymore, and therefore everything
just got put to the wayside. I also believe that this case has not been taken seriously by
anyone, and in fact, has been the brunt of many jokes and rude and crude behavior on
many individuals at my expense. I had tried calling Cynthia numerous times in May and
June with my situation, as she would be the one to do a RA also.

In Response to **Allegation #4 Sexual Stereotyping, Sexual Harassment**

I truly believe that due to my sexual makeup, my outward appearance, my gregarious
attitude, is mistaken for someone who deserves any or all of this. Well I am a person, I
hurt, and I will not be touched inappropriately or made to feel like less of a person
because people feel I deserve it. I have stepped on many toes here, and yes, I do feel
threatened at work. There are so many side things going on since my initial complaint,
that I at a point of severe insomnia, and panic attacks once again.

Jamie Kaplan
March 3, 2014
Page 4

I pray that this complaint to is found to have probable cause, and I am hoping for a swift and appropriate actions to be taken.

Thank you in advance for your time and consideration in this matter.

Sincerely,


Vicky L. Snyder

Cc: Robert Lenhard, Union Relations Specialist
    Jamie Klug
    Victim's Assistance



**ANDREW M. CUOMO**
GOVERNOR

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

VICKY L. SNYDER,

                         Complainant,

           v.

NEW YORK STATE, OFFICE OF MENTAL
HEALTH, ROCHESTER PSYCHIATRIC CENTER,
                        Respondent.

NOTICE OF CONFERENCE
AND
PRODUCTION OF RECORDS

Case No.
10165775

---

Federal Charge No. 16GB400769

TO:    Vicky L. Snyder
        320 Audino Lane, Apt. D
        Rochester, NY 14624

      YOU ARE HEREBY NOTIFIED to appear and attend before Julia B. Day, the Regional

Director of the New York State Division of Human Rights, or the duly designated representative,

**Jami Kaplan**, Human Rights Specialist II, at the Division offices located at: **259 Monroe**

**Avenue, Suite 308, Rochester, New York 14607, on February 25, 2014, at 10:00 a.m.**, for a

conference in connection with the investigation in the above-captioned proceeding with respect

to a charge that the Respondent violated §296 of the Human Rights Law. You may bring a

lawyer if you desire, but it is not necessary for you to do so. However, the other side has also

been so advised.

      Please bring with you all other witnesses, books, records, papers, and documents

pertaining to this matter, including:

**Complainant to produce:**  Contact information for Jamie Klug.
**Respondent to produce:**  1) Colomba Misseritti; 2) Carol Bradwell; 3) Anyone else who can address the allegations regarding the interrogation that is the subject of this complaint; and 4) Vickie Eudell and/or anyone who can address Complainant's allegations regarding the denial of her **accommodation request around July of 2013.**

**Note:** Government issued photo identification (such as a drivers license) may be necessary for entry into the building.

**Please contact Jami Kaplan, Human Rights Specialist II, at (585) 238-8254 within five business days of receipt of this notice, to confirm that you will be attending the conference.** NOTE: No adjournments will be granted unless requested within five business days of receipt of this notice, with suggested alternate dates provided. Such requests must be made in writing to the Human Rights Specialist assigned. Only one such adjournment request per party will be granted. Requests for extensions of more than two weeks will not be granted.

**Protection of personal privacy:** The Division observes a personal privacy protection policy consistent with Human Rights Law § 297.8 which governs what information the Division may disclose, and the N.Y. Public Officer's Law § 89 and § 96-a, which prohibit disclosure of social security numbers and limit further disclosure of certain information subject to personal privacy protection. Please redact or remove personal information from any documentation submitted to the Division, unless and until the Division specifically requests any personal information needed for the investigation. The following information should be redacted: the first five digits of social security numbers; dates of birth; home addresses and home telephone numbers; any other information of a personal nature. The following documentation should not be submitted unless specifically requested by the Division: medical records; credit histories; resumes and employment histories. The Division may return your documents if they contain

- 2 -

personal information that was not specifically requested by the Division. If you believe that

inclusion of any such personal information is necessary to support your position, please contact

me to discuss before submitting such information.

Please address all requests, questions, and other communication to Jami Kaplan, Human

Rights Specialist II, at the above number.

Dated: January 13, 2014
Rochester, New York

STATE DIVISION OF HUMAN RIGHTS

By:

Julia B. Day
Regional Director
Tel: (585) 238-8250
Fax: (585) 238-8259

- 3 -

Vicky L. Snyder
320 Audino Lane Apt. D
Rochester, NY 14624
December 30, 2013

Julia B. Day
Regional Director
NYS Division of Human Rights
One Monroe Square
259 Monroe Avenue suite 308
Rochester, NY 14607

> RE: Vicky L. Snyder v. New York State Office of Mental Health,
> Rochester Psychiatric Center, Ron Morrow
> Case No. 10165775

Dear Ms. Day:

The following will detail my rebuttal to the above-mentioned complaint which I filed
with the Division of Human Rights.

Allegation #1: **Retaliation**

Complainant fully alleges retaliation both in my first complaint and this one. First one as
stated because I did not help them with the Dwayne Freeman case, and now this one,
being interrogated on lies from officers statements. First and foremost Complainant
never received any contact via letter, phone call, email or in person to make a "dump" on
my phone to locate origination of these anonymous calls which informed complainant she
was to be interrogated. Furthermore, I was advised by counsel that this would create a
conflict of interest on their part to do so, and make them privy to information which they
would not otherwise have nor should have with the ongoing complaints with DHR.

Furthermore, RPC alleges that "several" officers alleged my behavior or comments could
have been sexual harassing behavior. Complainant fully understands the Sexual
Harassment policy and adheres vehemently to such policy. If OMH acted in accordance
with the established policy, we would not be where we are today. Sexual Harassment
complaints should be handled immediately and swiftly, so you mean it took RPC from
March, 2013, when statements were supposedly made by officers to time of interrogation,
October 4th, 2013, for anything to be acted upon. Then somehow, these statements from
officers were held to a much higher regard than my original complaint. Complainant
further states that these other officers, who have rights according to Ms. Bradwell, should
be admonished for their behavior as well. Just because I have not made any formal
complaints against these officers, I have stated numerous accounts as to what some of
their actions have been, and not only does it constitute a sexually harassing environment,
it also constitutes a severe environment which was not free of hostility. As a matter of
fact, Complainant is further bringing to light to Personnel other acts of retaliation at this

Julia Day, Regional Director
December 30, 2013
Page 2

time. Please note as date of this rebuttal, I have made contact with Sandy Smith, Personnel Administrator, a very troubling and concerning comment made by Sgt. Reed to another employee at RPC. This employee whom Sgt. Reed spoke with, felt compelled to bring it to my attention, but is somewhat reluctant at this time to come forth. What he stated to me is of grave concern, and since Sgt. Reed has been named in my prior complaint, and was also named as person who was present when Mr. Joe Coffey made his unacceptable comment, (there she is handcuff her), this further shows that RPC is not, nor will not keep this environment free from hostility. Furthermore, the statements made by Sgt. Reed were told to a Union Officer of CSE, Mr. Charles Session. Not only should this conversation should have never taken place, but for one of CSEA's officers to hold this conversation is severely detrimental to my case. I have advised Mr. Jamie Klug, President of CSEA at RPC of these matters, and he is in the process of handling this. Complainant has been told by other coworkers of certain things that they have been told, however many people are afraid to come forth as they have seen what I have been through, and they are afraid of retaliation. Truly, OMH did not act in accordance with its own policies and procedures regarding sexual harassment and retaliation, as exhibited by my interrogation on October 4th. Again I will reiterate that this interrogation was brutal, retaliatory, disrespectful, and further expounds into the territory of Whistleblower Act. DHR can listen to the DVD any time that is convenient for them. When I was able to finally listen to this, I was sick to my stomach. My reputation has been tarnished, I feel humiliated and demeaned.

## Allegation #2 **Hostile Work Environment**

I stated in my second complaint of hostile work environment. I am not **alleging** anything; but clearly stating the facts as they happened. Mr. Coffey **did** enter the Administration area with Chief Hanley, Sgt. Reed and an unidentified RPD Officer. Mr. Coffey **did** make a comment stating "there she is handcuff her". Mr. Coffey said what he said, and for Chief Hanley to state Mr. Coffey did not make these statement further shows the hostility and the lack of integrity of these employees. One is willing to lie, and the other is willing to back it up. I cannot nor will I be a part of the cover ups or lies. At least Ms. Carson said she couldn't recall. Wow have we really come to this? I do not know what to do when employees not only lie, but then cover up for one another.

Complainant finds it troublesome that these officers held such animosity towards me. Was it because I would not play in their childish and sexually deviant comments and/or behaviors. Conversations regarding these two complaints should not have been held at all, especially since Sgt. Reed was named in my first complaint regarding his handling of the criminal aspect of Ron Morrow. Furth more, Sgt. Reed at one time taught the Sexual Harassment class. This conversation only proves further how Sgt. Reed was one-sided and held my complaint against me. It also shows Sgt. Reed's conduct in the way he handled my criminal complaint against Mr. Morrow. Sgt. Reed told Mr. Session that I pretty much deserved it because of how I looked and how I dressed, i.e. that my clothes were tight and I was flirtatious. This is not only disgusting, but this man once did the training for Sexual Harassment. Where is RPC going with all this? Sgt. Reed further is

Julia Day, Regional Director
December 30, 2013
Page 3

the head of the Cultural, Linguistic and Respect Committee. I reiterate, Sgt. Reed
basically told this employee that I deserved it, and how I dressed and I was flirtatious,
etc. Nobody, and I repeat nobody, deserves to be touched and harassed. When I asked
Charles Session on Monday, if he would be willing to come forward, he stated he was
scared and that I was putting him in terrible predicament. He said that he told me on the
"down low". I don't care how he told me; it's the mere fact that these conversations were
said, and how Sgt. Reed feels about me. Yet. Sgt. Reed can carry on his "love affair" at
work while he is also this person's supervisor. Not sure how that works. I implored Mr.
Session to do the right thing. He then told me that he and Sgt. Reed may lie and not
admit to any conversation.

## Allegation #2 **Disability**

Ms. Missertitti stated that she has assisted with respect to adjusted work schedules,
voluntary reductions, etc. I am talking about the time period during this investigation,
which was in June when I first brought forth the ideas of Voluntary Work reductions,
Alternate work schedules, etc. It was medically driven in or around July of 2013, for a
reduced schedule to accommodate my ongoing medical appointments. This can be
verified through Unity Behavioral Health. Ms. Misserriti informed me that Vickie Eudell
out of Hutchings would be handling the Reasonable Accommodation. I do understand
fully that I am not eligible for FMLA nor have I complained of that. That is not my
issue. My issue is that several people throughout RPC have been granted all of the
above; including Flex Time, but in every area that I requested it was quickly abolished.
Remember, it was not until August 8[th, 2013] when I saw the State Attorney Doctor when he
took me out 100%. So to make a statement that this was a short time period is ludicrous.

## Allegation #4: **Sexual Harassment/Sexual Stereotyping**

Complainant again does not allege, but believes that I am the subject of discrimination
being a white single female over 50, having a disability, which caused complainant
several times to be looked or passed over for promotions, and also further states that
sexual stereotyping has, and does continue to be the basis of these allegations. I was
targeted continually to be the brunt of sexually explicit jokes, inappropriate comments,
behaviors unbecoming not only peace officer, but as employees of the Rochester
Psychiatric Center.

I will again state, if I were married, not blonde, not large breasted, etc. I totally believe I
would not be the target of these actions. I would also like to add how I was definitely
retaliated against when I was interrogated. There is not a more overt act than that. Also,
I have asked what the outcome of my interrogation is, and I am told by Personnel that
they have not received an answer regarding this interrogation. However, in the response
by Counsel, it stated that OMH investigator found "no evidence to support a sexual
harassment allegation but raised the concern that is potentially offensive to others and
appropriate in the workplace".



**NEW YORK STATE**
# DIVISION OF HUMAN RIGHTS
ONE MONROE SQUARE
259 MONROE AVENUE, SUITE 308
ROCHESTER, NEW YORK 14607

(585) 238-8250
Fax: (585) 238-8259
www.dhr.ny.gov

ANDREW M. CUOMO
GOVERNOR

December 24, 2013

HELEN DIANE FOSTER
ACTING COMMISSIONER

Vicky L. Snyder
320 Audino Lane, Apt. D
Rochester, NY 14624

     Re:    Vicky L. Snyder v. New York State, Office of Mental Health, Rochester
           Psychiatric Center
           Case No. 10165775

Dear Vicky L. Snyder:

Enclosed is a copy of the respondent's written response to your recently filed complaint. At this time, we are asking you to submit a written response (known as a "rebuttal") to the enclosed material, in order to further the investigation of your case. Please include your case number on your submission. You may submit your rebuttal by mail and/or fax to the address and fax number on the above letterhead, and/or via email to roc.syr@dhr.ny.gov.

Please review the enclosed, and submit your written rebuttal to us by January 8, 2013. The Division will not extend the time for this response, unless good cause is shown in a written application, submitted at least five (5) calendar days prior to the time the response is due.

If we do not hear from you, we will assume you have nothing to add. The case may then be decided on the basis of what is in the file.

**Protection of personal privacy:** You may wish to submit documents in support of your complaint. The Division observes a personal privacy protection policy consistent with Human Rights Law § 297.8 which governs what information the Division may disclose, and the N.Y. Public Officer's Law § 89 and § 96-a, which prohibit disclosure of social security numbers and limit further disclosure of certain information subject to personal privacy protection. Please redact or remove personal information from any documentation submitted to the Division, unless and until the Division specifically requests any personal information needed for the investigation. The following information should be redacted: the first five digits of social security numbers; dates of birth; home addresses and home telephone numbers; any other information of a personal nature. The following documentation should not be submitted unless specifically requested by the Division: medical records; credit histories; resumes and employment histories. The Division may return your documents if they contain personal information that was not specifically requested by the Division. If you believe that inclusion of any such personal information is necessary to support your complaint, please contact me to discuss before submitting such information.

Please remember that you must notify us immediately, in writing, of any change in your address or telephone number. Thank you for your cooperation.

Very truly yours,

*Julia B Day*

Julia B. Day
Regional Director



JOHN V. TAURIELLO
Deputy Commissioner and Counsel

**STATE OF NEW YORK
OFFICE OF MENTAL HEALTH
COUNSEL**

44 Holland Avenue
Albany, New York 12229

December 23, 2013

Julia B. Day
Regional Director
NYS Division of Human Rights
One Monroe Square
259 Monroe Avenue, Suite 308
Rochester, New York 14607

      RE:   DHR Case No. 10165775

Dear Director Snyder: ✓

      The following constitutes the Respondent's response to the above-referenced Complaint filed with the Division.

**Allegation #1:  Retaliation**

      **Complainant alleges that on or about October 2, 2013 she received two phones calls on her cell phone. The first was a female voice concerning an upcoming interrogation. The second call was a male voice stating that she should not go to work October 3 because she was going to be walked out of work.**

**Response:**

      Ms. Snyder was interrogated on October 4, 2013 as per policy because an internal ✷ complaint was filed naming her as Respondent.

      The Office of Mental Health (OMH) Office of Special Investigations attempted to contact ⚹ Ms. Snyder in order to make a "Dump" of her phone in an effort to identify the individuals who made the two anonymous calls. Ms. Synder did not respond to OMH's request to review her phone log to determine the source of the anonymous phone calls.

Ms. Snyder asserts in her Complaint that the filing of the Internal Complaint naming her as a Respondent was Retaliatory because of her Complaint No. 10163590 filed with the Division.

**Response:**

During the course of the investigation of Ms. Snyder's initial Complaint again Mr. Morrow, several Safety and Security Officers described some of Ms. Snyder's behavior or comments.

The draft report concluded that Ms. Snyder's alleged behavior or comments could have been sexual harassing behavior. OMH's Sexual Harassment in the Work Place Policy prohibits anyone at OMH from ignoring the existence of sexual harassment calling it tantamount to tolerance and is not permitted.

OMH acted in accordance with its established policy and questioned Ms. Synder concerning the allegations. A report was prepared and the investigator did not find evidence to support a sexual harassment allegation but did raise the concern that is potentially offensive to others and is appropriate in the work place.

**Allegation #2:  Hostile Work Environment**

Ms. Snyder asserts in her Complaint that the Rochester Psychiatric Center is a hostile work environment alleging that on or about October 2, 2013 the Director for Facility Management in the presence of Chief Hawley, Sgt. Reed and an unknown Rochester Police Officer approached Ms. Snyder's work station and said "There she is hand cuff her".

**Response:**

. Ms. Snyder stated she was mistaken that this alleged statement was not directed at her but believes that is was directed at the individual seated behind her (Ms. Carson).

Mr. Coffee denies that he said "there she is hand cuff her" or anything like that to either Ms. Snyder or Ms. Carson. Additionally, Chief Hanley stated that Mr. Coffey did not make the alleged statement and Ms. Carson could not recall the incident

### Allegation #3:  Disability

**Ms. Snyder alleges being discriminated because of a disability.**

Response:

Ms. Misseritti has assisted Ms. Snyder when able, with respect to an adjusted work schedule which was medically driven in December of 2012.  This Schedule was declined or rescinded by Ms. Snyder in January of 2013.

Additionally, Ms. Snyder is ineligible for FMLA because she failed to work the requisite number of hours in 2012.

### Allegation 4:  Sexual Harassment/Sexual Sterotyping

**Ms. Snyder alleges that she is being treated differently because of her gender.**

Response:

OMH denies that Ms. Snyder is treated differently than any other employee at the facility and that any employment decisions concerning her are not based  upon her gender or because she has a matter pending before the Division.

### Conclusion

The Office of mental Health, Rochester P.C., by its actions did not retaliate against Ms. Snyder for having filed a complaint with the Division, nor has it discriminated against her based upon her gender or disability.

Please feel free to contact me if the Division requires any additional information to complete its investigation of this matter.

Very truly yours,

Alan H. Sunukjian
Assistant Counsel

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

Vicky L. Snyder
320 Audino Lane, Apt. D
Rochester, NY 14624

EEOC Charge Number: 16GB400769
NYSDHR Case Number: 10165775

### NOTICE

This office has been informed that you filed a complaint of employment discrimination
with the New York State Division of Human Rights (NYSDHR). The purpose of
this notice is to inform you of your federal rights pursuant to one or more
of the statutes under which you may have filed. Please be advised that your
complaint will be investigated by the New York State Division of Human
Rights, not the Federal Equal Employment Opportunity Commission (EEOC). All
questions, correspondence and status reports with regard to your case must be
directed to the New York State Division of Human Rights office where your
complaint was filed.

**YOUR FEDERAL RIGHTS** (if you filed under):

[X] Title VII of the Civil Rights Act of 1964, as amended — If you want to
    file a private lawsuit in federal district court with your own private
    attorney because you do not want the New York State Division of Human
    Rights to conduct an investigation, you may request from the EEOC a
    Notice of Right to Sue, 180 days after you have filed your complaint.
    Once the EEOC grants your request, it is only valid for ninety (90)
    days from the date the Notice was issued, after which your time to sue
    expires. If you want the New York State Division of Human Rights to
    conduct an investigation, you do not need to make this request, or to
    contact or write either agency. The New York State Division of Human
    Rights will contact you and/or advise you in the near future of their
    investigation and determination findings.

[X] The Americans with Disabilities Act of 1990 (ADA) — Same as Title VII,
    above.

[ ] The Age Discrimination in Employment Act of 1967, as amended(ADEA) — If
    you want to file a private lawsuit with your own private attorney, you
    could do so any time after 60 days from the date you filed your
    complaint with the New York State Division of Human Rights. This is
    only if you do not want the New York State Division of Human Rights to
    conduct an investigation, otherwise you do not need to do anything at
    this time. The New York State Division of Human Rights will contact
    you and/or advise you in the near future of their investigation and
    determination findings.

Date: November 26, 2013

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

## EEOC REVIEW PROCEDURE

If you want the EEOC to review the New York State Division of Human Rights
final determination, because you are not satisfied with their final findings,
you may request that the EEOC conduct a substantial weight review.   This
request must be done in writing to the EEOC and within <u>fifteen (15) days</u> from
the date you received the New York State Division of Human Rights final
determination.   Otherwise, we will adopt the state findings.

You review request must specify the reason(s) why you do not agree with the
New York State Division of Human Rights final determination.

Mail your request for substantial weight review to:

                    Equal Employment Opportunity Commission
                    Attn: State and Local Unit
                    33 Whitehall Street, 5th Floor
                    New York, New York 10004-2112

This address is for review purposes only.   Remember, if you have questions
concerning the status of your case, you must contact the New York State
Division of Human Rights.

Date: November 26, 2013



NEW YORK STATE
**DIVISION OF HUMAN RIGHTS**
ONE MONROE SQUARE
259 MONROE AVENUE, SUITE 308
ROCHESTER, NEW YORK 14607

(585) 238-8250
Fax: (585) 238-8259
www.dhr.ny.gov

ANDREW M. CUOMO
GOVERNOR

HELEN DIANE FOSTER
ACTING COMMISSIONER

November 26, 2013

Vicky L. Snyder
320 Audino Lane, Apt. D
Rochester, NY 14624

> Re:  Vicky L. Snyder v. New York State, Office of Mental Health, Rochester
> Psychiatric Center
> Case No. 10165775

Dear Vicky L. Snyder:

Please be advised that this office has received your complaint. Your filing date is
11/26/2013.

A copy of your complaint, and the determination, will be sent to the U.S. Equal
Employment Opportunity Commission (EEOC), so that your complaint may be dual-filed under
applicable federal law. Your EEOC charge number is 16GB400769.

To protect your rights, it is essential that the Division be notified promptly of any change
in your address or telephone number. A form is enclosed for this purpose.

You will be contacted by the Human Rights Specialist assigned to your case when the
active investigation of your complaint begins. In the meantime, if you have any questions please
call our office at (585) 238-8250, or contact us via e-mail to roc.syr@dhr.ny.gov.

Very truly yours,

*Julia B Day*

Julia B. Day
Regional Director

## NEW YORK STATE
## DIVISION OF HUMAN RIGHTS

## <u>DO NOT JEOPARDIZE YOUR RIGHTS. COMPLETE AND RETURN THIS FORM TO THE REGIONAL OFFICE IF YOU MOVE</u>.

Return to:
**NYS Division of Human Rights**
**Rochester Regional Office**
**259 Monroe Avenue, Suite 308**
**Rochester, New York 14607**
or by fax to: **(585) 238-8259**

PLEASE PRINT

Re:     Vicky L. Snyder v. New York State, Office of Mental Health, Rochester Psychiatric Center
        CASE NO: 10165775

COMPLAINANT'S NAME: Vicky L. Snyder

New name, address, and/or telephone:

NAME: _____

ADDRESS: _____

_____

TELEPHONE NO: _____

DAYTIME/OTHER TELEPHONE NO: _____

I WILL BE AT MY NEW ADDRESS ON OR AFTER: _____

Please indicate below the name, address, and telephone number of a person who may be contacted and will know your whereabouts if the Division cannot locate you:

_____

_____

_____

_____

_____          _____
Date                            Complainant's Signature

Vicky Snyder
320 Audino Lane Apt D
Rochester, NY 14624

October 25, 2013

Division of Human Rights
Attn: Ms. Day
One Monroe Square
Rochester, New York

Re: Complaint #2 from DHR #10163590 and EEOC #520-2013-02747 (dual filed complaint) Vicky L. Snyder vs. OMH, RPC, Ron Morrow

Dear Ms Day/MS Kaplan:

This is a second complaint regarding a Complaint which I filed on July 26, 2013 with DHR.

Since extenuating circumstances occurred after initial complaint, I was informed by you to make a second complaint to which I am now doing. I would also hope that this complaint be dual filed with EEOC also.

I am alleging the following acts of discrimination:

1. Retaliation

2. Hostile Work Environment

3. Disability

4. Sex: Sexual harassment, sexual stereotyping

Please note that I have done my best to make this chronological and tangible, but I know this is not my best work. Therefore, some phrases may go under a certain act of discrimination which I have included in another. However, the sum and substance is there at the conclusion of all this.

Allegation #1 Retaliation

On or about October 2, 2013, complainant received a restricted call from a female woman which stated, "Vicky you are going to be interrogated". Complainant did not recognize voice, or knew whereabouts of which this call was from as it was "restricted", or what this pertained to. On same day, Complainant received another phone call from a male, which sum and substance was, "do not go to work tomorrow because you will be walked out". Again, I did not recognize voice or circumstances surrounding this call. I had

received these calls after returning to work on 9/23/13, never realizing what was going on (meaning that I was coming back to work to face a full blown interrogation). On day of phone calls, I was off due to daughter having complaints of wisdom tooth pain. Complainant first took these two calls as harassment, now complainant saw maybe it was a warning. However, who would know about interrogation other than people being questioned, and Personnel? Please see DHR case No. referred to above, which I believe this case ties into as total act of retaliation.

Complainant received a call from Personnel Director, Colomba Misseritti October 2nd or 3rd, I think it was next day after phone calls, when she called me. I had already stated reason why she was calling me....I stated I was going to be interrogated. She was in disbelief... and asked how I knew this information, to which I explained the above calls. Complainant also received one more call before the interrogation on the 3rd from an unknown male, which stated, "I told you we'd get revenge". To Ms.Misseritti's credit, I did ask her if I was going to be walked out because I told her I could not go through much more. She replied, within the scope of what she could tell me, "no". Now, I wasn't so sure what these calls pertained to but clearly, the interrogation which followed, shows people were out to hurt me, or rather they were correct as far as I was going to be interrogated. Who would be privy to this information? Think about that? Besides Personnel and Safety I do not know who would have my personal information like my personal phone number. So, it had to be someone in personnel, someone involved in the initial complaint or safety. So I think this should be looked into further. I want to change my number, however because of the many actions, Legal, doctors, etc. going on; I don't believe it would be in my best interest right now. Furthermore, after 11/7/13, I named some officers whom I had not named previously prior to the conference. Well, it got back to certain individual/s. Remember, all the Officers are not against me. So, now you want me to keep naming names...no way. I believe that something will happen to me. I have left my children with a lot of information in case something does happen further down the road. So now I ask you to think who was in that conference? Think who had anything to gain or lose? Talk is cheap, however it is powerful. My mother used to refer it to the "nights of the round table". I got the information I needed to know which makes my investigation that much more unfathomable.

Allegation #2: Hostile Work Environment:

Now please keep in mind, I went to work, knowing the above calls, which I did not tell anyone at the time, and then Joe Coffey, Director for Facility Administration, Chief Hanley, whom was my supervisor at time of initial complaint, Sgt. Reed, whom I worked alongside on almost a daily basis, and an unknown RPD Officer came to third floor where I was now working. Mr. Coffey stated, "There she is, (looking in my direction), handcuff her". I immediately got sick inside, started to panic, and then realized he was talking to the Secretary behind me, Lynn Carson. However, I immediately went to the bathroom and got sick. I did not originally know this was not a joke, nor did I think it was funny under the circumstances as I knew about phone calls. Later I would be asked in the interrogation, that if I took this as a joke? Isn't it funny how when some people say

stuff it should be taken as a joke, but EEOC found it compelling to turn statements by officers from an interrogation to turn it around on me, as though I was this sexual deviant. So now we have given Administration, etc. the authority to pick and choose what is a joke and what is not. Something to think about, also.

The interrogation took place on the 4th of October, which was a Friday, to which my CSEA representative was there, Jamie Klug, and Carol Bradwell, EEOC Diversity Manager from Albany. She stated this interrogation took place because of my sexual harassment complaint, and that these individuals, mind you, did not ever make a formal complaint against me, but by their witness statements for Ron Morrow, this interrogation evolved. So first and foremost, Complainants question regarding phone calls were clear....WARNING! Good or bad, this was very scary to me. Wow, this almost sounds familiar. (Meaning complaint I was asked to write a statement regarding Dwayne Freeman)

After speaking with Diversity Manager, Cynthia Crowell sometime in May, I believe or so,...oh wait, (I honestly can't pin point at this time my last conversation with Cynthia), I believe in June or June, after asking numerous times for a VRWS, then Reasonable Accommodation, all with no response, I was informed in July by Ms. Misseritti that she, Cynthia Crowell was no longer diversity Manger Affirmative Action. However, in 11/7/13 conference Ms. Crowell stated she was relieved of that duty in August. Posting for that position came out in July. Seems somewhat confusing to say the least. I was referred to Vickie Eudell out of Hutchings. I was told by Ms. Eudell she was going to handle the Reasonable Accommodation, but when I asked her about the Sexual Harassment, she told me she was not sure, thought maybe her boss was handling it, and then told me she would let me know. She never did, now I know why, because this complaint was now being turned around on me. I was told that I could not be accommodated in any department for a VRWS, Reasonable Accommodation, etc., however, after my return on 9/23/13, many departments, as far as KBS I or II's were down. Anyway you put it; they could have used my help. I worked in HIMS last week of June, however, when I asked for VRWS and RA, I was told that HIMS, could not accommodate this, but when I returned on 9/23/13, I was told by Joan Smith that the position had not been filled and that they reasonably accommodated a pregnant, African American woman. I said, oh, that's good, and she said it's better than nothing. She went on further to state that this individual could not do this, that, etc. Then I also heard how behind Risk Management they were behind in the data entry of their NIMRS reports. This is a very important task, as I had worked in Risk Management, and was familiar with the process. Also, the wards were down two secretaries, and when I came back on 9/23/13, I also helped out with the delivery of mail to and from those wards. I was told it was a huge help.

To further explain the retaliation by the interrogation I went through:

The interrogation went something like this"

[Recipient Name]
November 21, 2013
Page 4

"Vicky. an officer stated you were known to place your breasts and rest them on an officer's arm." Again, since I have not been able to hear the tape, this is not verbatim. Oh and most recently I found out from CSEA president, Jamie Klug, this tape could not be played. I could not believe that I was being asked this question in any rational way. Really, even as Ms. Misseritti asked this, she could not contain herself when she asked the question. Complainant stated absolutely not. I have never been complained about as to my conduct at work or how I acted, etc.

Then she went on to state, "Vicky you stated to an officer that you "did your best job on your knees". I further could not even believe this, as I was still overwhelmed with first accusation. Not only would I never say something like that, please check into doctor statements, which everyone was very much aware I had surgery on left knee. So to make a statement that I could stay on any knee, let alone both knees is shocking and sickening, and to even think one of the officers said that I stated this is demonstrative, and a total defamation of character. Later I would learn in the 11/7/13 interrogation this is why Ms. Cynthia Crowell and Ms. Colomba Misseritti thought I should not go back to safety. However, they never stated that I was in jeopardy and my welfare, mental and/or physical was in further jeopardy. When I do find out who said this, I will be bringing further legal action against that individual or individuals, as this is true defamation of character. This is true slander a libel. I stated to Ms. Misseritti "no". Please see first 1st DHR complaint. What is astounding is that there were a few officers who either asked me out, or implicitly or explicitly referred to sexual things about me. According to Ms. Misseritti, I think she said, what if there were witnesses? I know I was in disbelief, but for officers to lie and back up other officers lies/ statements, it is total retaliation, and downright scary. I cannot nor will I ever take the blame for what officers wished what they could or could not (please listen to interrogation CD), oh that's right...we can't, it doesn't work...do with me, and that this would be a total act of retaliation. Now do you really believe that I am safe at work? Now, for the record, should complainant start stating names of officers who told complainant and stated in front of others who they went out with at RPC or what remarks which were stated about female employees, and there were witnesses...many times. I guess this conduct would explain somewhat why 6 or 7 officers were going through divorces or separating at that time. Now that my story is running rampant through RPC, and people only have one side, it would behoove everyone if these women knew what was being said etc. Actually, I think these other women should know how they were talked about behind their backs. They deserve that. If they hate me at the end of the day, so be it, but they should know how they were the brunt of numerous jokes or sexual deviant comments also, such as how easy they were or this one gives good "blow jobs. Well, all I can say is that I had been at work in the Safety Dept. little to none after making formal complaint because of the rude, crude and suggestive comments. To reiterate, I stated in first complaint how these officers went about taking finger prints, and this was not limited to any one officer in particular. It was based on who was on duty in the office, and most of the time it would come down to how good looking the girl was, and who wanted to fingerprint who, etc. Actually it was said I probably didn't have any fingerprints to take because of my age. Oops, there goes

the age discrimination again. This conduct was for e people outside of work, as well as nursing students. Mind you, they hated when an "older lady" came in. Older people obviously skin changes, and line of work made fingerprints harder to obtain on the Livescan. A lot of times these women had to be fingerprinted in the old fashioned way, inked and rolled. On a daily basis, something was stated sexually about me, or age or who I was seeing, or what I did, etc. Mind you, this was not limited to me, but also a few of them stated things about my daughter sexually. If I came in quiet and did not speak, I was picked on etc.

Ms. Misseritti stated, "Vicky it was said while in the realm of your employment duties which I performed while in Room A101, when you were in a dress, that I said "there is no lady like way to do this." Please look in room A101and acknowledge that what we did for Emergency Management checks on first Friday of every month which entailed plugging in several phones to outlets which were not accessible by any person, male or female, in a gentleman or lady like way. To access the plugs in an appropriate manner, it did not matter if you were in jeans, dress, skirt, or any other type of clothing. You had to either go over the table or go under the tables. Please see Debbie Olmstead, Secretary 2 to verify that I never acted inappropriate in any manner. Since I only did this with two officers, Officer Adam Scheidt, and Officer Colin Sick, I know without a doubt it was Officer Scheidt.

Complainant did this duty first Friday of every month with one of two officers, Adam Scheidt or Colin Sick, (main officers), and Deb Olmstead, Secretary 2 to Director of Operations, Joe Coffey who so kindly made that joke stated earlier. At no time did complainant do anything that neither was sexual or intended to be sexual, nor should have been construed as sexual while I did my work responsibilities. I would like to know how they would have acted if it were somebody who they didn't flirt with or find attractive. Furthermore, may I remind everyone that Officer Scheidt, whom I know made this comment, hated the world because his wife left him and turned lesbian. He also was an officer, who on many occasions stated inappropriate comments to me and about certain situations. I can understand his frustration, but that is no reason to hate all females, as he reiterated this many times. To further expound on this issue, Officer Scheidt stated numerous times, he did not feel sorry for the other officers who were going through separations or divorces, because in his mind, his wife turned lesbian and he stated, "How do you compare with that"? I believe Officer Sick is an ex-employee now. I know Officer Sick did not make this comment. Officer Sick would not make this comment to me or about me. I know for a fact how Officer Sick is because of his Military background. He did not believe on rolling over on anyone. Furthermore, he was so targeted. He did not stand a chance against some of these same officers. Again, shame shame.

Please note that Complainant affirms fully that these accusations are a total lie or embellishment of circumstances or statements to protect their own, Ron Morrow. Why I am not sure now, especially after 11/7/13 conference. Mind you again, these statements came from my original complaint against Officer Morrow touching my breast. However,

[Recipient Name]
November 21, 2013
Page 6

the egregious acts by some of the officers after this took place should be looked into as these officers acted and conducted themselves in this manner, thus hostile work environment, also conduct unbecoming an officer. Even a Sgt. who totally acted the same with me after my complaint, stated he didn't know what was going on, but nobody knows how to act now around me. Well, if that's the case, then Ron Morrow blatantly lied on 11/7/13 as he stated he did not know sum and circumstances of his being taken out of work until two months later when he was interrogated. So that means that some of us can just say and act anyway we want by mere virtue they are Peace Officers. I would never believe that some of these officers would act and behave in such an unbecoming way and I applaud those that stayed true to whatever their belief was. In other words, keep your opinions to yourself. Why would they act any differently? When other officers were taken out of work, Administrative Leave with Pay, officers started to engage in normal daily routines. However, when some of these officers were out due to their unbecoming conduct, they had a lot to say. Why then was I admonished? Well, let's put it simply, some of these officers made rude and crude comments about three or four female older officers. These female officer have retired, one I believe because of disability, one is still working, and they were all subjected to rude and belligerent comments, however much of this was behind their backs. They knew, and many of them cried. I believe one found the strength to stand up for herself. These acts are out of any realm of being a department that should be backing each other. That doesn't mean lying and it doesn't mean talking crap. I find this to be totally one sided, as at least 3 other officers, while married, not ones previously mentioned, were carrying on with female employees while on duty. They were married. Now certain officers want to comment on my conduct? Or to even extend it further, why is this a point of concern now as Ms. Bradwell so kindly pointed out? Has everyone lost their last grip on what is going on here?

Ron Morrow worked for Rochester Police Department before coming to RPC. He had to resign because his sexual behavior had gotten him into trouble there. However, we know if someone resigns we don't know the details of that, nor can we really get that information. However, like with me, news travels, and people start to talk. Furthermore, as my union rep. said, "if this happened, (meaning what the witnesses stated in their statements about me), why is it being brought up now? 'Ms. Bradwell said that nobody made a formal complaint, and this came out of Vicky's complaint, and that the Governor's office of EEOC felt that it should be looked into'. Now may I remind you, my complaint to my supervisor was on 3/5/13. RPC had so much time to do their internal investigation before it went to Albany. So, what you are saying, RPC, DHR or EEOC, whomever, it took seven, (7) seven, again seven months, now going on 8th, now 9th month to come up with this, to now turn it around on me that I did these things as stated above mentioned, we wait nine months to question someone? So, to expound on this, if in fact I did any of those things, it means that an Officer (a Peace Officer has a right to touch your breast at any time)? I think what everyone is losing is what happened that started this whole complaint; an Officer, while on duty, grabbed my breast, then further made comments, made me feel fearful, leered, made sexual comments, and then stated a

comment about a hotel. Now, if any of you are married or in a relationship, what would you think or do if that was your wife, your sister, your mother, etc.?

So quit the delay, stop the insanity, the accusations flying, and make a decision. Funny how when I was asked to make a formal statement against Dwayne Freeman, (DHR complaint in 2011 I believe, that in approximately three months decisions were made, he was back to work, and he got taken off nights, and punished for something about watching "Dexter" movies. Furthermore, the complaint which was brought against him, which I did not make, did not even happen at work nor were there any witnesses. Furthermore, if any of the statements the officers made which resulted in the interrogation is in any way factual, construed as fact, why as a Peace Officer should this have not been reported. Director of Personnel said", what if there were witnesses to this"? Well, we all know of the "good old boys club" and shame on them. Please let me look in their eyes while they are lying. Not only that, as officers, if they construed or misconstrued this as any act of bullying, sexual harassment, or anything else, it should have been there obligation to immediately report this behavior. (See RPC policies) So then were they derelict in their duties? Also, the Officer/s whom stated I would rest my breasts on their arms, wishful thinking. Foremost, they are Peace Officers, shame, shame for lying. So is this what they do when they take statements from employees that make allegations against patients or patient against patient? Makes you wonder, right, where does their allegiance lie? They are trained to interrogate, write reports, etc., so do not down play for one moment that they had no knowledge that their statements would not be used or could be used at some further time.   Furthermore, officers would state what they said about other officers who were interrogated. Kind of scary, have you got a department that is totally broken?

Allegation #3: Disability

Not only that, according to the lot of them, I was never there, so in the brief time I was accounted for, all I did was behave in this kind of manner? All I had time to do was rest my breasts on officer's arms, and say I did my best job on my knees? This is what you got at the end of the day? And, why, if in fact I did do this, or was known to do any of this, why did the Sgts. Not act immediately? Then Ms. Carol Bradwell had the audacity to state, they have rights, (remind you, after recorder was off) and Jamie stated clearly that this was a pure act of retaliation, and furthermore, he reiterated that there is PTSD here, (meaning with me) and she does not feel safe at work. I affirmed that, and Ms. Misseritti asked what she or they could do? Listen to the CD because I reiterated about not feeling safe, I believe before recorder was turned off, especially now after this interrogation, the phone calls, and these ludicrous comments? Now this has exacerbated this fear to enormous extremes. I do believe that there are some officers who are decent and good, but now I don't know how RPC can trust some of them, because the lies exhaust me. These are trained people who are taught to interrogation; look out for patients, staff and visitors. So now, who would I turn to if something happened, as I believe some of these officers are not decent, and they would lie to save themselves at any cost. Also, I don't believe the Board of Visitors would want to hear some of this, on

[Recipient Name]
November 21, 2013
Page 8

either side. Please see above comments I made when I returned to work on 9/23/13 about various positions that could have used my help and one department who stated that they needed someone full time and gave a reasonable accommodation to an African American pregnant woman? Wow.

To further make my point, I have been with the state almost 14 years. I have never had a counseling, write up, or unsatisfactory evaluation. Yes, I had a "need improvement on time and attendance" thus the reasons behind my many demands for VRWS, WA, RA etc. I am still currently out of work and have tried numerous times to go back.

So now, to bring it home, and now all of a sudden she, meaning me, I am the perpetrator. I will not justify, qualify nor dignify this was a plausible answer. I feel more dehumanized and humiliated than ever. I can only surmise that this interrogation was an act of last resort, in which to get Mr. Morrow back and RPC not to be culpable in any way), or for officers to lay out defenses for the future if I were to make remarks against them. I even stated I did not want Mr. Morrow to lose his job. I knew he had children to support, but while he was out on paid leave, this behavior went on and his fellow officers conducted themselves in this way, RPC needs to look deep into this. These acts in and of itself are sad and deplorable.

Furthermore, please see legal issues which Ms. Wallace ( Mr. Morrow's live in girl friend or ex, (who also was an ex RPC employee) brought about on April against Mr. Morrow…. Supposedly these charges were dropped. All I can say, if there is one honest officer left, ask that person why Ron left RPD or why he had to. Ask Ron, why he was seeking out all these women at RPC. He stated, he couldn't help himself. I cannot understand why Ron did what he did, or lie, outright lie, nor why he exacerbated the issues, but this is a guy who needs help. So,  give him help, bring me back from financial ruin, make me right, put him in some kind of sexual classes, everyone quit antagonizing me, and let me finish RPC the way I started, happy, healthy and a go getter. It's to RPC's gain. It's for Ron to get help, and it's for me to keep in therapy and get healthy mentally and put this behind me, and get on with my life without fear, retaliation and reprisals.

What totally makes me question RPC's goals, etc, is how do we have this mindset to blame the victim? The very stuff we teach we breach. That is the statement I am going through with. I am working with a Victim's Advocate Counselor, and though hindsight is 20/20, now looking back I should have ran to Personnel each time I felt I was being sexually harassed, or ridiculed or demeaned, etc. If in fact I did that, or overheard conversations which did not pertain to me, or saw emails which were sexually oriented, I believe that I would have been in Personnel every day. It's one thing for officers or whomever to make statements as to what they saw or did not see, it's another, to totally take this complaint on a run and make me the aggressor, and somehow make it like I deserved that. Also, we have people who are supposed to be domestic violence advocates. "The very stuff we teach we breach". Wow, I did not know I had this power. I am or was an outgoing individual, and tried to be accommodating to everyone, I tried to shun or laugh certain things off, but when it comes down to all of this, I no longer can

believe that this place (which treat people with Mental health issues), turn around and totally go against everything that they profess to be. I have turned into someone who is now scared, thinking that I will be hurt, or something else. That is pure hell to go through on a daily basis at work. Being an individual who has gone through a rape and being physically hurt, which even most recently happened New Years Eve, two years ago, this has brought up such horrendous memories. For me saying no means I could be hurt. I am haunted. Yes, during the course of this whole thing, I almost took my own life. Not intentionally, just not caring or feeling hopeless and that I caused all of this; re-victimization. Once there was a time I feared to go home, now I am in fear to go to work. So how do I get beyond this? I don't know what is lurking around the corner, who is going to misconstrue how I look, what I wear, what I say, or even lie, because that is what is happening now. Lies, and outright remarks that are meant to hurt, demean me and scare me. I can't believe I worked beside some of these people. I am done fighting, because there is no justice when the victim keeps being re-victimized. I am just getting weaker and sicker to go through this. I feel the only way to get past this is to go through this. I will endure and I will make my story known.

Allegation #4: Sex: Sexual Harassment and Sexual stereotyping.

Ms. Day/Ms. Kaplan, at the end of the day, this is in your hands. I don't know what else to do or say. I am 51, blonde, green eyes, and large breasted. I don't think that this means "I am the typical big breasted, dumb blonde, and I should understand and just take this. Nobody should have to feel like this. You don't even know the full extent, but now I am deploring you and EEOC to right a terrible wrong and make it right. RPC knows, all of you know, and now this may end here, but it is not nor will it be the end for me. Being your own lawyer and being the victim, wow, such an encumbrance, but I believe that this has happened for me to tell my story, and for me to make some changes. Maybe I am not strong enough to do this yet, but a little bit each day. I will not have anyone again, especially RPC take away what little dignity I have left. I have reached bottom with this, and I am sure there will be many more tears shed by time this is done, but I will stand in the end, and I will make sure that I stay strong for other women, our daughters, our sisters, or whomever, our mothers. Do you know what my children, even though they are older, what they have gone through? We are tight, and they can't stand to see their mom like this. I believe I will make a difference. Nobody deserves to be touched, or mistreated, and I did not expect this at work, at my age, nor foremost to report something as serious as sexual harassment, which not only altered my working conditions, altered my whole life, etc.

Complainant preys for the relief herein:

Complainant demands all medical which is not covered, either by worker's comp. or her blue choice, to which to date is:

Dr. Buckley: 8 visits at 25 each which equals $200.

[Recipient Name]
November 21, 2013
Page 10

SMH : 100 copay

Batavia Hosp. 100 copay

Unity 8 visits: if blue choice picks up $320

Mobile Mental Health $40

Lost wages at work which equals:   Personnel has to get figures, let me add this was done with fault on them also, and add in my loss of longevity, (please remind DHR Mr. Morrow was paid for a numerous number of weeks while on Disciplinary Leave).  Funny, when I was interrogated, and supposedly did or said these things, I was not placed on any Administrative Leave with pay.  Makes one wonder how this happened when everyone else is on LWP while being investigated.  This is a pure, direct and underhanded act by OMH, RPC, EEOC, to try to turn tables to mitigate their culpability in their role and lack of actions or inactions in my case.  May I also add to this that most recently on Friday, I believe the 15th of November I had a conversation with Personnel regarding my pay or lack thereof.  I was told I was overpaid $2600.  I asked for an answer as I have not even been back long enough nor have I received this kind of money, and I was told, well if you wouldn't call in a day here or a day there.  Again mortified.

Complainant Lost:

March 11 – 29' see various dates in April and May which were LWOP, and June,  from the 11th on through last week in June, when the Chief gave his gallant dissertation of how he said things took place. (the total July 1st week was due to my dad, however, his decline in part because he also knew something was wrong with me).  Then next week from then on no pay, at all.  Oh I supposedly had an audit, then there was some SL half pay.  Like I said I don't even know.  Then I had a Worker's Comp. hearing.  Chief showed, but Cynthia did not.  At that time, RPC knew Cynthia was no longer Affirmative Action, please see posting dated July 26th.  I believe August 8th was the depositions, and the best this SIF lawyer had, was how did I feel when my mother died?  Wow, talking about hitting below the belt.  You guys are really reaching.  I started to cry, and he kept asking, how I felt, and how depressed I was.  Darn right, not a better woman alive than my mom, so when he brought up all those terrible memories, I went further into a downward spiral. How low do we have to go?  It was terrible.  At one point I even said I can't do this.  We can get a copy of the court reporters record.   My doctor stated that nobody's body alarm is meant to be on all the time.  Mine is, there were 8 witnesses to the 11/7/13 hearing that should state I had to leave room at least two times.  Lost count.

Please subpoena records from personnel as to what I was paid and when I was not paid.

Complaint also seeks gas to and from appointments to which were numerous to mention:

Dates can be furnished:

Furthermore: please attach a price when complainant almost lost her life in July, see Batavia Health Hosp. statement. Though this was not a deliberate attempt, it was a person who was beyond reason, hopeless, helpless, and whatever other term we can use. I am so thankful to this day for the sheriff's in Genesee County. I may not have been here today. What price do we put on that? All I know was his name was Joe, and he saved my life that night. I will find him eventually to thank him, because you don't know what that means to me and to my family. That is what Officers do. That is a commendation beyond anything I could ever imagine. My son came to the hospital next morning to pick me up. Do you know what that did to him? I cannot ever imagine the hurt, helplessness, hopelessness he must have felt. But he came. Joe spoke with him, and you know what, at the end of the day, no matter how sick I get, my hives, etc. I have the best three kids any woman could ever ask for. I am here today because of them. I remember Joe at one point talking to me, and he spoke to me like I was a person, someone cared, he made me feel like I was a good person and I was just going through a bad thing. You don't know what they did to find me. He kept me going. He actually got me laughing at one point, but in my head; I felt my kids didn't deserve a mom like me, beaten, broken, lost, etc. But my oldest son picked me up and he is a good great kid. Like Joe said, you have some wonderful people who care about you. I won't let you give up. So yes, I get down, I struggle, but I won't get that low again. I thought if I shared this with my children they would be ashamed; just the opposite. They rallied, and they made me feel worthwhile, they gave me hope, they made me laugh, they cried with me.   I can't ask for anything better, but they also gave me the will to fight and go on.

So to go on regarding losses: I furthermore, while on LWOP I am supposed to pay full amount of insurance coverage which to date is $700 or more. (See statement from Health Benefits)

Next, please put a price on being engaged on 2/2/13, and then it is gone. What price do you put on that?

Also, please note, (and may I say the most important out of all), I could not help my elderly father who needed help with appointments, etc. He has declined since my mom died in 2009. He was moved out of his house and moved into my brother's in 2011. We finally got an aide in, but you know what, he knows when his little girl is hurting and he couldn't do a damn thing, and I would used to go there every weekend and I could not do that. What is that price? Please, if you can attach any price on this, let me know, because then I know we have lost all human dignity, and there is nothing left, especially from a mental health institution.

To sum things up" Complainant is a white female over 50, who has been the brunt of many sexual jokes, touching, interrogated, etc., and was continually the subject of numerous sexually explicit statements and/or overheard statements. It seemed so easy and plausible, because this was how the department was before I was there. Deb Raymond, a previous secretary who worked there, spoke of her "wild" lifestyle, in which included bondage and weird sexually explicit content to which she told the officers on a

[Recipient Name]
November 21, 2013
Page 12

continual basis.   Furthermore, they also spoke of Terry Brew, which was a secretary
prior to Ms. Raymond, and how they could not stand her, and how they all thought she
had something going with Sgt. Reed.  One officer went on to further state that "during her
time of the month how she smelled so bad, and he was glad that I wasn't like that".
Please tell me how you respond to that.  Also, how do you respond to officer's
commenting on your vagina, (camel toe)?  Wow, this is what it is?  A lot of times I
wanted to say something, and sometimes I did, but then I heard comments like, oh Vicky,
you are sensitive, is it your time of the month, you're getting old, Oh my god, if you're
going to work here, you have to learn to take jokes, etc.  The barrage was continuous.

In closing, make a wrong, a right, back up your policies, and I wonder, why was MS,
Bradwell so upset by Dr. Crilly's email regarding sexual harassment?  Now mind you, I
was his secretary when I came back on 9/23.  I was content; I thought things were going
to be ok, until all this interrogation and retaliation took place.  Makes you wonder, right?
In other words, why did that little email hold so much weight, but yet, here we are several
months later not knowing what to do.  Also, this email went out to all of RPC, but it
wasn't til little ole Vicky commented on this in the interrogation, that Ms. Bradwell got
so, well,  to put it in mild terms, enraged.  Why?  Then, Dr. Crilly left a short time after,
or did that email force him out?  Nobody has made a decision on anything.  The criminal
charges are somewhat coming to a finality, but mind you, Judge Crimi gave me a total
state away until 5/14.  Mr. Morrow has to do community service.  Furthermore, Mr.
Morrow said this was closed, and it's not closed.  If he does what he is supposed to do,
not bother me, his community service, etc. he could, and may I remind you could get an
ACD.  Well he should not even have been allowed at the hearing.  Workers Comp.
neither conclusion, nor Division of Human rights, and now also my interrogation.  May I
remind you that on 11/8/13, day after DHR hearing, I went to work.  Nobody could
believe it.  However I found an email from Marisol Nunez, Albany who also was
involved in complaint against Dwayne Freeman.  I don't think she meant to send it to me
as the email was about me and sent to somebody else (please see email dated 10/15/13,
after my interrogation.  So, OMH and RPC are still digging to get me.  Complainant will
continues to right the wrongs; as we are a mental health facility, and we deal with this in
a professional and righteous conduct of mannerism.  So, therefore, I will not let this go
unnoticed, nor will it go to the wayside.  I, even if I am not at RPC, will get my message
out.  Nobody should ever feel unsafe at work, nobody, male or female, should ever be
touched, and most of all, don't ever let the fear of retaliation get to you, because it will be
there.  Be strong, and you know what, nobody has a right to touch anybody.  You know
that and I know that.  We have several patients who have been abused as kids, adults, etc.
It stops now, as far as workplace sexual harassment.  I took the test, did you?  I would
also tell any female employee who is thinking of making a formal sexual harassment
complaint to not do it.  I will let her know everything I have been through.  These people
deserve to know that.

Well, in closing, Complainant now imploringly states an act of retaliation and further acts
of hostile work environment for making complaint filed with DHR on 7/26/ 13 with
regard to sexual harassment case.  Complainant further demands all statements against

her as she is entitled to under the FOIL act. Complainant further asks for protection under the Whistleblower Act. Also, complainant fears for her well-being at work. Please note that many things have to go through the Safety Office. Not me, not now! I have and will further take this up with Attorney General's office, which I know represents the state. Furthermore, upon any derogatory remarks that defames Complainant's character, will take this further up the legal ladder. Please see, KOLP vs. office of Mental Health, RPC.

In closing, Complainant preys RPC and DHR will come to a final conclusion to make a terrible situation at least workable again.

Complainant herein demands the following relief:

$400,000 (for current and future loss of earnings), for medical, also what I would have lost towards retirement, pain and suffering, leaving her job at RPC, further medical appointments, and firing Ron Morrow. Complainant also demands a letter of recommendation for any future employment that I seek. After the hearing on 11/7/13, I know that I am not safe; you know I am not safe, take notice of Cynthia Crowell's statement about her investigation, and what she spoke to Colomba about, regarding statements from officers. I know a lot more, and I know most of all, this officer is a danger not only to himself, but to patients, and staff and his girlfriend or ex. It stops. We can right a wrong or it can make this go bad.

Complainant has proof of officer's behavior, other Officers placed on leave, numerous times complainant has asked for WA, AWS, or RA for health reasons, etc, and denied or ignored. Furthermore if this goes beyond this hearing which goes to EEOC, Complainant will ask for further damages, to which I fully believe I can provide proof, and to which Officer Morrow, could lose his job. I will request my right to sue letter, and I will seek a very competent legal counsel. Please note, Officer Morrow was an ex RPD. I have two RPD's who are willing to back his sexual deviant behavior. Complainant also has ex RPC staff that is willing to testify to certain behaviors exhibited by Officer Morrow. Complainant will further bring action against officers who made defaming remarks, and have affected her character. If a reasonable and rectifiable conclusion cannot be made, then I will have no alternative but to take this further. I may be down right now, but the greatest joy is not how many times we fall down, but how many times we get up. I will get up and I will get my health back. Remember, the very thing we teach, we breach.

Complainant never has, nor ever would make a complaint of this nature. I will reiterate, I had nothing to gain. I lost everything, most importantly, I lost Vicky. Once again, should this have been taken seriously if I were younger, different national, different religion, different nationality; no, I am blonde, green eyed, large breasted. So therefore, she, meaning me, I asked for this and I deserved this. No, I do not. I was in a mostly male environment, plus only CIVILIAN and I had no chance from the beginning. So with anything left in me I pray for the relief set forth herein, and therefore, RPC will gain

[Recipient Name]
November 21, 2013
Page 14

one more step towards their mission and goals, I will not pursue anything further, and
most of all, I will get me back. That is what I want most.

Sincerely,

*Vicky Snyder*

Vicky Snyder

Cc: EEOC



# New York State Division of Human Rights
# Complaint Form

## CONTACT INFORMATION

My contact information:

Name. _Vicuy L Snyder_

Address: _330 Audino Lane_   Apt or Floor #: _D_

City: _Rochester_   State: _NY_   Zip: _14624_

## REGULATED AREAS

I believe I was discriminated against in the area of:

☑ Employment   ☐ Education   ☐ Volunteer firefighting

☐ Apprentice Training   ☒ Boycotting/Blacklisting   ☐ Credit

☐ Public Accommodations   ☐ Housing   ☐ Labor Union, Employment
(Restaurants, stores, hotels, movie   Agencies
theaters amusement parks, etc.)   ☐ Commercial Space

I am filing a complaint against:

Company or Other Name: _Office of Mental Health / Rochester Psychiatric Ctr._

Address. _1111 Elmwood Ave, Roch NY 14620_

City: _Rochester_   State: _NY_   Zip: _14620_

Telephone Number: _585   241   1300_
(area code)

Individual people who discriminated against me: _This is a 2nd complaint based on original complaint filed with DHR on 7/26/13_

Name: _____   Name: _____

Title: _____   Title: _____
_All officers who made statements contradictory forcing causing all acts of retaliation to result in interrogation of 10/4/13 some as_

DATE OF DISCRIMINATION — _Discrimination has been ongoing_ _This complaint_
_original sexual harassment complaint on ≈ 2/13/13._

The most recent act of discrimination happened on: _10_   _4_   _2013_
                                                    month   day   year

_Stems from interrogation of myself on above date - However retaliation has been ongoing since 1st filing. 2nd Complaint is done due to recommendation made by DHR._

## BASIS OF DISCRIMINATION

*Please tell us why you were discriminated against by checking one or more of the boxes below.*



You do not need to provide information for every type of discrimination on this list. Before you check a box, make sure you are checking it only if you believe it was a reason for the discrimination. Please look at the list on Page 1 for an explanation of each type of discrimination.

**Please note:** Some types of discrimination on this list do not apply to all of the regulated areas listed on Page 3. (For example, Conviction Record applies only to Employment and Credit complaints, and Familial Status is a basis only in Housing and Credit complaints). These exceptions are listed next to the types of discrimination below.

### I believe I was discriminated against because of my:

| | |
|---|---|
| ☐ **Age** *(Does not apply to Public Accommodations)* <br> Date of Birth: | ☐ **Genetic Predisposition** *(Employment only)* <br> Please specify: |
| ☐ **Arrest Record** *(Only for Employment, Licensing, and Credit)* <br> Please specify: | ☐ **Marital Status** <br> Please specify: |
| ☐ **Conviction Record** *(Employment and Credit only)* <br> Please specify: | ☐ **Military Status:** <br> Please specify: |
| ☐ **Creed / Religion** <br> Please specify: | ☐ **National Origin** <br> Please specify: |
| ☒ **Disability** *continue to have been* <br> Please specify: *hersid doen for AIDS,* <br> RA, VRNS | ☐ **Race/Color or Ethnicity** <br> Please specify: |
| ☐ **Domestic Violence Victim Status:** <br> *(Employment only)* <br> Please specify: | ☒ **Sex** <br> Please specify: ☒ Female ☐ Male <br> ☐ Pregnancy <br> ☒ Sexual Harassment *Sexual Stereotyping* |
| ☐ **Familial Status** *(Housing and Credit only)* <br> Please specify: | ☐ **Sexual Orientation** <br> Please specify: |

☒ **Retaliation** *(if you filed a discrimination case before, or helped someone else with a discrimination case, or reported discrimination due to race, sex, or any other category listed above)*

Please specify: *Please see Charge. 10 163590*



Before you turn to the next page, please check this list to make sure that you provided information **only** for the type of discrimination that relates to your complaint.

5

## EMPLOYMENT DISCRIMINATION

*Please answer the questions on this page only if you were discriminated against in the area of employment. If not, turn to the next page.*

**How many employees does this company have?**
a) 1-3        b) 4-14        c) 15 or more        d) 20 or more        e) Don't know

**Are you currently working for the company?**

☒ **Yes**

Date of hire:        ( __10__ __28__ __1999__ )        What is your job title? __KPS I__
                          Month      day      year

☐ **No**

Last day of work:  ( _____ _____ _____ )        What was your job title? __KPS II__
                          Month      day      year

☐ **I was not hired by the company**

Date of application: ( _____ _____ _____ )
                          Month      day      year

### *ACTS OF DISCRIMINATION*

**What did the person/company you are complaining against do? Please check all that apply.**

☐ Refused to hire me

☐ Fired me / laid me off

☐ Did not call me back after a lay-off

☐ Demoted me

☐ Suspended me

☒ Sexually harassed me

☒ Harassed or intimidated me (other than sexual harassment)

☐ Denied me training

☒ Denied me a promotion or pay raise

☒ Denied me leave time or other benefits

☐ Paid me a lower salary than other workers in my same title

☐ Gave me different or worse job duties than other workers in my same title

☒ Denied me an accommodation for my disability

☐ Denied me an accommodation for my religious practices

☐ Gave me a disciplinary notice or negative performance evaluation

☐ Other: _____

6

**DESCRIPTION OF DISCRIMINATION -** for all complaints *(Public Accommodation, Employment, Education, Housing, and all other regulated areas listed on Page 3)*

*Please tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory.*
**PLEASE TYPE OR PRINT CLEARLY.**

I am a 51 yo blonde female, green eyes and work at RPC
+ filed a complaint with DHR on 7/26/13 re-a sexual
harassment of affetion co-worker Ron Morrod Complainant
stated several oeisd Discrimination which difference will
take place on 11/7/13 Complainant returned to work on
9/23/13, moved to a different area, and was doing well until
Complaint received two restricted phone calls on or
about in/3, one female stating "You are going to be
interrogated Another from a male stating "If you go to
work tomorrow, you will be walked out. I did not bring
this to attention of any Personnel Staff at this time however
when I spoke to Ms. Masseritti, Director of Personnel, I told her
I knew why she was calling --- because I was being
interrogated. Ms. Masseritti was amazed at this because
she had not informed me at such. I was interrogated
on 10/14/13 (Please note I/s will be available of interrogation)
Complainant denied each and every accusation as to Sexual
allegations and CSEA rep and myself so noted pure
acts of retaliation by witnesses. Furthermore, before
interrogation Complainant was arriving at her designated
work location, when Joe Coffey Director for facility administration,
Chief Hanley, Chief of Safety, Sgt. David Read, and unknown RPC
officer approached Complainant's work location. Mr. Coffey
then stated, "there she is, handcuff her." I immediately
thought this was no joke was directed towards me, since
I was previously warned + was giving to be was walked
out- Imagine the degredation, humiliation, fear, panic,
etc. Complainant felt. (Please see written statement by
Complainant attached)

*If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form. PLEASE DO NOT WRITE ON THE BACK OF THIS FORM.*

## ADDITIONAL INFORMATION

The next three pages are for the Division's records and **will not be sent out** with the rest of your complaint.

### Contact information

My primary telephone number:

585    794   1763
(area code)

___home phone
___work phone
 X  cell phone
___other _____

My secondary telephone number:

_____ _____ _____
(area code)

___home phone
___work phone
___cell phone
___other: _____

My email address:  VSnyder39@ yahoo. com

Last four digits of my Social Security number:  2772

Contact person (someone who does not live with you but will know how to contact you if the Division cannot reach you):

Name:  Kim  Plate

Telephone number:  315    537    7710
(area code)

Relationship to me:  Sister

### Special Needs

I am in need of: a) A translator (if so, which language?):  N/A

b) Accommodations for a disability: _____

c) Other: _____

### Settlement / Conciliation:

To settle this complaint, I would accept: (Please explain what you want to happen as a result of this complaint. **Do you want** a letter of apology, your job back, lost wages, an end to the harassment, etc?)

Complainant is seeking follow up lohr work day accommodate
follow-up medicals. Complainant is seeking pain & Suffering
damages and defamation of character if the amount of $1.2 mil
loss of future income (in WTA included) hostile work environment
which caused several days off without pay (multiple)
threat of life or perceived threat via phone calls, cannot
or $400,000 $2.2 - hundred thousand), which also includes
loss of retirement funds loss of deferred, + loss of housing.

**Witnesses:**

The following people saw or heard the discrimination and can act as witnesses:

Name: Jamie Klug                          Job title: MHTA / CSEA rep

Telephone number: 585 241 1200

Relationship to me: CSEA rep / co-worker

What did this person witness? He was informed I was going to be interrogated
+ knew of circumstances— we sat through interrogation

Name: _____          Job title: _____

Telephone number: _____ _____ _____

Relationship to me: _____

What did this person witness? _____

If you have more witnesses, please write their names and information on a separate sheet of paper and
attach it to this form. Please do not write on the back of this form.

I was informed of 10/4/13 interrogation involving me through
anonymous phone calls. — please (request co-of interrogation)

**Additional Details:**

**Did you report or complain about the discrimination to someone else?**
(If you told someone, filed a report or sent a letter about the discrimination, please indicate whether you went
to a supervisor, a manager, the owner of the company, your human resources office, your union, your
housing provider, the police, etc.).

Again refer to original DHR
complaint

**Date you reported or complained about discrimination:** _____ _____ _____
                                                          month  day  year

**How exactly did you complaint about the discrimination?**
(Who did you talk to about it? Who did you filed a report or make a formal written complaint or union
grievance with? What did you say?)

_____
_____
_____

**What happened after you complained?**
(Was your complaint investigated? Was any action taken in response to your complaint? Did the
discrimination stop? Did you experience retaliation for complaining?)

_____
_____

12

If you did not report the discrimination, please explain why:

See Prior
File No 10143590

Did the person you are complaining against touch you, hurt you, or physically harm you?
☐ Yes    ☐ No

*If yes, please explain:*

Examples of other people who were discriminated against in the same way as you were:
*(For example, people who were harassed by the same manager, disciplined or terminated for the same reasons, did not receive an accommodation for the same reasons, etc.).*
*If you are complaining about discrimination relating to race, national origin, age, religion, etc. please describe their races, national origins, ages, religions, etc.*

Examples of other people who were treated better than you were:
*(For example, people who were not fired for doing the same thing you were fired for, people who were doing the same job but making more money, people who were allowed to stay in the store while you were told to leave, etc.).*
*If you are complaining about discrimination relating to race, national origin, age, religion, etc. please describe their races, national origins, ages, religions, etc.*

13

## NOTARIZATION OF THE COMPLAINT

Based on the information contained in this form, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment), or filing my housing/credit complaint with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing),as applicable. This complaint will protect your rights under Federal Law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained the in aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief.

Sign your full legal name

Subscribed and sworn before me
This 30ᵗʰ day of JUU , 2013

Signature of Notary Public

SUZANNE M. CAMARATA #01CA6142219
Notary Public, State of New York
Qualified in Monroe County
My Commission Expires Mar 13, 2014

County: Monroe          Commission expires: MArch 13, 2014

*Please note: Once this form is notarized and returned to the Division, it becomes a legal document and an official complaint with the Division of Human rights. After the Division accepts your complaint, this form will be sent to the company or person(s) whom you are accusing of discrimination.*

9